In the Matter of the Estate of WEBSTER WAGNER, deceased.

In the Matter of the Accounting of JAMES D. TAYLOR, as Surviving Executor, etc.

To the extent that a surrogate is given jurisdiction in the administration of the estates of deceased persons, he acts judicially; and while his judicial acts are controlled by the limitations imposed by statute, where in a matter within his peculiar jurisdiction it is claimed that he is divested of all discretion, to justify that conclusion the language of the statute must be incapable of any other interpretation.

The provisions of the Code of Civil Procedure (§§ 2715, 2726, 2727), authorizing a "person interested in the estate" to apply to the surrogate for an order to compel an executor to file an inventory or to account, and requiring the surrogate, in case he is satisfied that the executor is in default in filing a sufficient inventory, to make an order requiring him so to do, or in case he fails "to show good cause to the contrary" to require him to account, and the provision (§ 2514, sub. 11) that where a person interested applies, "an allegation of his interest duly verified suffices, although his interest is disputed," do not make it compulsory upon the surrogate to grant the petition, simply because the petitioner swears that he is interested.

The said provisions do not deprive the surrogate of the discretion and power to pass upon the right of the petitioner to demand the relief sought, and the executor may show, in opposition to the application, that the estate has been settled, and that all the beneficiaries named in the will have received their share and released the executor from all claims; and this being shown, it is the duty of the surrogate to deny the application.

As to the filing of an inventory, the executor is not in the eye of the law "in default" or "a delinquent," and as to the accounting, he does not fail "to show good cause to the contrary" when it appears that the estate has been accounted for and distributed among

those entitled thereto ; and this, although the accounting and distribution were made out of court.

*It seems,* where it appears in answer to such an application, that the right of the petitioner has been satisfied and extinguished or barred by a release, and the *factum* of the settlement or release is put in issue by his reply, or it is questioned on the ground of fraud, the surrogate has no jurisdiction to try the issue, and should dismiss the petition, remitting the applicant to his proceeding in a court having general equity powers to try it. ·

Reported below, 52 Hun, 23.

APPEALS from judgments of the General Term of the Supreme Court in the third judicial department, entered upon orders made March 16, 1889, which reversed two orders of the surrogate of the county of Montgomery ; one of which required the surviving executor of the will of Webster Wagner, deceased, to make and file an inventory, and the other of which required him to make and file an account of his proceedings.

The material facts are stated in the opinion.

*Hiram L. Huston* for appellant. The existence or non-existence of a release or similar instrument, or its validity if existing, is immaterial in this proceeding. (Code Civ. Pro., § 2514 ; *Thompson* v. *Thompson,* 1 Brad. 24 ; *Burwell* v. *Shaw,* 2 id. 322 ; *Creamer* v. *Waller,* 2 Dem. 351 ; *Bonfanti* v. *Deguerre,* 3 Brad. 429 ; *Matter of Reed,* 41 Hun, 95 ; *In re Dunkel,* 10 N. Y. S. R. 213 ; *Reilly* v. *Duffy,* 4 Dem. 366 ; *Harris* v. *Ely,* 25 N. Y. 141, 142 ; *Wright* v. *Fleming,* 76 id. 517.) The paper signed by the widow and Norman L. Wagner expressly excepts the specifically " devised " personal effects, and has relation only to the residuary estate, and so far as it can operate as an acquittance or release, its general words are qualified by the particular recital. (*Jackson* v. *Stackhouse,* 1 Cow. 122 · *McIntire* v. *Williamson,* 1 Edw. Ch. 34 ; Bishop on Contracts, § 856 ; Code Civ. Pro., §§ 1837, 1843, 2743.) It was not a matter of discretion with the surrogate to grant or refuse the relief sought ; to refuse it would have been error. (Code Civ. Pro., §§ 2715, 2727.)

*Matthew Hale, Esek Cowen* and *William H. Van Steenbergh* for respondent. The surrogate had no power upon the plead-

ings and proofs in this case to compel James D. Taylor, as surviving executor, to file an inventory of the personal estate of his testator, or to produce his accounts for settlement. (*Lockwood* v. *Thorne*, 18 N. Y. 285; *Valentine* v. *Valentine*, 2 Barb. Ch. 430.) The case was one in which the surrogate might easily have found that the application was not made in good faith and was vexatious. (*Forsyth* v. *Burr*, 37 Barb. 540.) The surrogate erred in directing Mr. Taylor, as surviving executor of Webster Wagner, to return an inventory of the personal property mentioned in the second clause of said Wagner's will. (*Bevan* v. *Cooper*, 7 Hun, 117; *Westcott* v. *Cady*, 5 John. Ch. 334; *De Peyster* v. *Clendinning*, 8 Paige, 295.) The surrogate could not, on the accounting, try the validity of the release. (*Stillwell* v. *Carpenter*, 59 N. Y. 414.)

GRAY, J. The appellant asks us to hold it to be immaterial that an executor may, in answer to petitions to compel him to file an inventory, or to render an account, exhibit to the surrogate the evidence of what apparently is a perfect bar to any such right; forasmuch as that officer, it is urged, under the Code provisions, is without discretion in the premises. The claim is made, that the interest of an applicant being sufficiently alleged, or undisputed, the surrogate cannot exercise his judgment in the matter, but is obliged to grant the petitions. Turning to the facts in the record before us we find them to present this case: Webster Wagner left him surviving a widow and five children; and by his will, after making certain specific gifts of real and personal estate, he gave his whole residuary estate to them "to be divided equally between them, share and share alike." He appointed as his executors, his wife, his son Norman (the late husband of this petitioner) and his son-in-law; all of whom qualified; but of whom only one, Mr. Taylor, the son-in-law and the respondent here, survives. In March, 1885, about three years after the probate of Wagner's will, and while all the executors were living and acting, the widow and five children of the deceased united in the execution of an instrument in writing and under their seals; which, after reciting

the provisions of the will, acknowledged the receipt by each of the residuary legatees from the executors of the one-sixth part of the real estate and personal property, not otherwise specifically devised under the will, and acquitted and released the executors of Wagner of all legacies, dues and demands whatsoever under or by virtue of the said will, or against the estate.

It will be remembered that those executors were also three of the six persons who took all of the estate between them. The son Norman died in the year following this settlement, intestate, leaving a widow and children. As administratrix of his estate and the guardian of his children, his widow has made these applications to compel Taylor, the sole surviving executor, to file an inventory and to make an accounting. He opposed her proceedings, upon the basis of the instrument which I have referred to. The petitioner denied its execution and alleged fraud in its procurement; but the surrogate, on the ground that he had no discretion in the matter, granted both of her applications.

If what the appellant is here contending for is to be taken as the correct view of the surrogate's jurisdiction and powers in these matters of administration of estates, then we must not only ignore the spirit for the letter of the statute, but we should have to regard that officer as exercising an authority, which is not moved by his judgment, but may be mechanically set in motion, regardless of the rights of parties. I cannot assent to such a view, where the letter kills. The general jurisdiction conferred upon the Surrogate's Court, in matters relating to the conduct of executors and administrators, would seem meaningless, if not an absurdity, if it did not comprehend the right to decree intelligently, and upon equitable principles, and to order their conduct upon principles of justice and of reason. To the extent that the surrogate is given jurisdiction in the administration of the estates of deceased persons, he acts judicially. His judicial acts are, of course, controlled by the limitations imposed by the provisions of the statute, but where, in matters within his peculiar jurisdiction, it is sought to divest him of all discretion, the language of

the statute, to bear such a construction, must be incapable of any other interpretation. It was said by Brown, J., in *Seaman* v. *Duryea* (10 Barb. 523), speaking of the provisions of the Revised Statutes, which empowered surrogates to direct and control the conduct of guardians and other trustees, "to direct and control is to govern and command, and the authority to direct and control their conduct must comprehend the power to compel them to do whatever the law requires they should do, or it comprehends nothing."

Now the power of the surrogate to direct and to govern the conduct of an executor or administrator means to order him to do what is just and lawful, and, in a case where it does not appear either just or reasonable that he should be compelled to do something which is asked of him, I should be strongly inclined to disregard a phrasing, or words, of the statutory provision, which are supposed to give support to the extraordinary claim that, nevertheless, a compulsory decree by the surrogate must issue. We should be unwilling to give so irrational an interpretation to a statutory provision, as to divest the judicial officer of the power to exercise his judgment, in acting upon an application authorized to be addressed to him, in a matter within his special jurisdiction.

It may be conceded that the petitioner is a "person interested in the estate," within the meaning of the particular sections of the Code, in view of her representative capacities; but the question cannot rest there. The fact that the petitioner has, or represents, an interest which, all things being equal, would authorize the surrogate to act upon the application, ought not, legally or rationally speaking, to be sufficient where, in opposition, it is made to appear that the interest in the estate has been extinguished by a satisfaction of the legatee's demand. That view accords better with the reason of the thing, for it is one which refuses to sanction a proceeding apparently useless, and certainly so, if the objection of the executor to the application is well founded. Here the objection is the instrument, which evidences a division of the estate, and a receipt by each person entitled of his or her

full share.   Now, as the petitioner stands in the shoes of her
intestate, and can have no other or greater interest, or better
rights than he had, we should suppose that, until the instru-
ment was adjudged invalid, it ought to bar any proceedings
to compel further administrative acts by the personal repre-
sentatives of Webster Wagner.   But reliance is placed on the
provisions of the Code of Civil Procedure in support of this
argument, which, it is claimed, deny to the surrogate any
exercise of judgment in the matter, provided the applicant for
his order swears to an interest.   Section 2715 of the Code
relates to the case of " a creditor or person interested in the
estate " applying for an inventory, and it provides that " if the
surrogate is satisfied that the executor or administrator is in
default, he must make an order requiring the delinquent to
return the inventory, or a further inventory ; or, in default
thereof, to show cause   *   *   *   why he should not be
attacked."   Sections 2726 and 2727 relate to the case of " a
creditor or a person interested in the estate " applying for an
accounting, and the provision is that if the executor or admin-
istrator fails " to show good cause to the contrary,   *   *   *
an order must be made directing him to account," etc.

Then subdivision 11 of section 2514 defines the expression
" person interested " and provides that where such a person
applies for an inventory, an account, etc., " an allegation of his
interest duly verified, suffices, although his interest is disputed,
unless he has been excluded by a judgment, decree or other
final determination."   What is there in the language of these
sections which makes it compulsory upon the surrogate to
grant the petition of a person *prima facie* interested, and
deprives him of all discretion, when, in opposition, it appears,
in effect, that the estate has been accounted for and distributed ?
These, obviously, are provisions made for cases of unsettled
estates ; cases where there is an unfulfilled legal duty resting
upon the executor or administrator.   But where, as in the case
before us, the executor shows a settlement of the estate and
its distribution by and between the persons entitled to share in
it, I think he has shown himself to be without further duty to

perform. As to an inventory, he cannot be "in default," nor "a delinquent," in the eye of the law, if the estate has been in fact accounted for to and distributed among the legatees; nor, with respect to an application for an accounting, does he fail "to show good cause to the contrary," when those facts are made to appear. Nor does the fact that the accounting and distribution were made out of court affect the question; for there is no policy of the law to be subserved either way. The Code provisions were intended to facilitate the administration of estates, by furnishing a machinery for that purpose, which is equally available to the faithful and diligent executor, as it is to the creditor, on any person interested in the estate, against a recalcitrant and unfaithful representative.

All that is meant by the subdivision of section 2514 referred to, is that the executor or administrator cannot put off or avoid the performance of an unfulfilled legal duty by disputing the sufficiency of the interest of the petitioner; and it has reference to cases where a person interested "may" apply. The petitioner here may be "a person interested," within the definition of the Code, and still not be entitled, as matter of right, to the orders she asks for, while it appears that the estate has been distributed and, on the face of the matter, there would be nothing the executor could or should do. The Code provisions in question do not deprive the surrogate of the discretion and power to pass upon the right of the petitioner to demand an inventory or account, and that is the first question for him to determine, when the matter of such an application comes before him. It is his duty then to deny the petition, if it should appear that the petitioner is not, on the face of the proceedings, entitled to the order, and he should not permit the executor to be uselessly harrassed.

I have examined the cases, to which our attention is called, and I find none which embarrass or conflict with our conclusions. The principle of the decision in some of them recognizes a discretionary right in the surrogate to refrain from exercising the power to require an inventory and account. Such is the case of *Thomson* v. *Thomson* (1 Bradf. 24), where

is also pointed out the distinction between the jurisdiction of the English ecclesiastical courts, whose decisions were cited, and the more ample jurisdiction of our Surrogate's Courts. No reported case is referred to, and I find none, which holds that on such facts as appeared here, showing a settlement and distribution out of court between all the necessary parties, evidenced by their writings under seal, the executor would, or should, be compelled to go through the farce of filing an inventory and rendering an account, which would lead to nothing and be utterly useless while the writings stood. The law is reasonable in its demands, and no unreasonable intendment should be read in a statute, by which an injustice may be worked, or an absurd result brought about.

The question here is not whether the petitioner is a person who might, ordinarily, insist upon the granting of such petitions; but whether, conceding that as a general proposition, she has the right to set the machinery of the Surrogate's Court in motion, in the face of the apparent evidence of a complete settlement between the executors and all persons interested.

Whatever standing the petitioner has, she obtains through the transmission of rights and interests from the deceased legatee, and, if this paper represents a genuine transaction, is it conceivable that the deceased would have been heard upon such an application, if made by him? He was executor, as well as beneficiary, and could he so dissociate himself in the one capacity from himself in the other, as to entitle himself to be heard by the surrogate to complain of fraud, or other causes, to invalidate the settlement? Evidently that would be absurd. But if impossible for him, why should the difficulty cease to exist when the applicant stands before the surrogate as his administratrix, or as the guardian of his children? It has not disappeared by his death; nor does that event affect the validity of his acts, and the surrogate ought to refrain, in the face of such facts, from exercising his authority and remit the discussion of the questions to the courts having jurisdiction to hear them. In *Gratacap* v. *Phyfe* (1 Barb. Ch. 485), Chancellor Walworth held, that in the case of an application

by, or in behalf of, a person claiming to be interested in the estate as creditor, legatee, or next of kin of the decedent, the right of the applicant to call for an account may be questioned, and that "the party cited may show, in answer to the application, that the right of the applicant to an account is barred by a release, or otherwise." And the inference is fairly made from the language of the opinion in *Bevan* v. *Cooper* (72 N. Y. 328), that this court thought the surrogate should refuse to entertain a proceeding, when the question of the validity of a release arises therein, which is beyond his powers to try, and should leave the determination to be first made by the appropriate court.

I think we should hold it as the true exposition of the law in such cases, where an application is made to the surrogate for an order compelling the executor or administrator to file an inventory, or to render an account, and it appears, in answer to it, that the applicant can have no right to such an order, by reason of his interest having been satisfied and extinguished by a settlement and distribution, whether in or out of court, or barred by a release, or otherwise, and the factum of a settlement, or of a release, or any act constituting the bar, is put in issue by the reply of the applicant, that the surrogate should dismiss the petition and remit the applicant to his proceeding in a court having general equity powers to try out such an issue. That power the surrogate does not possess. His powers and duties are prescribed by the Code provisions and his jurisdiction is special and limited to the subjects described by the statute. That general jurisdiction, which comprehends such a power as to nullify and set aside the deeds of parties for fraud, is not comprehended in the express grant of powers, nor is it incidental to the particular authority conferred. The procedure in Surrogate's Courts formerly followed the course of the common law, and now is governed by the system created by the provisions of the Code of Civil Procedure. Neither before did they possess, nor do they now possess, the general powers of a court of equity. (*Bevan* v. *Cooper*, 72 N. Y. 317; *Stilwell* v. *Carpenter*, 59 id. 414.)

I think the General Term were right in holding that no inventory should be required of this surviving executor as to the personal property, which, with the farm on which it was, was given by Webster Wagner to his widow, for her life, by the second clause of his will. She was an executrix of the will, and presumably received and enjoyed the use of this personal property. The executor of her will might, properly enough, be called upon to account for such property by this petitioner, as administratrix of the deceased remainderman, or as guardian of his children; but it would seem monstrous, under all the circumstances of this case, that the surviving executor of Webster Wagner should be held to any accountability in that respect. Several years after the probate of the will the estate was finally settled up between all of the parties and the executors acquitted of all responsibility for any demands under the will. In other words the parties, dealing in fact with themselves, arranged and concluded a settlement and distribution to their own satisfaction, and that, I think, ended the matter.

I think the General Term were right in wholly reversing the orders of the surrogate, and that their judgment and order of reversal should be affirmed, with costs to the respondent.

All concur, Andrews, J., in result, except Earl, J., not voting.
Judgment affirmed.