In the Matter of the Judicial Settlement of the Account of CALEB RANDALL (now Deceased), as Administrator of the Estate of HARVEY RANDALL, Deceased, Continued in the Name of JAMES H. RANDALL, as Administrator of CALEB RANDALL, Deceased, Appellant; JANE RANDALL et al., Respondents.

1. SURROGATES — JURISDICTION. The general powers of a court of equity do not belong to a Surrogate's Court. (Code Civ. Pro. §§ 2472, 2481, 2743.)

2. ACCOUNTING — DISPUTED ASSIGNMENT OF DISTRIBUTIVE SHARE. When, upon an accounting in Surrogate's Court, the same distributive share is claimed by two persons, one by original title and the other by an assignment apparently valid, resort must be had to a court of equity to settle the dispute.

3. ASSIGNMENT OF DISTRIBUTIVE SHARE TO ADMINISTRATOR — SURRO- GATE WITHOUT POWER TO SET ASIDE, ON ACCOUNTING. A Surrogate's Court has not power, upon the final settlement of the accounts of an administrator, to set aside or treat as invalid a written assignment, valid upon its face and made for a good consideration, whereby one of the next of kin has assigned to the administrator, as an individual, a distributive share in the estate; but the question of the validity of the assignment is for a court of equity.

Matter of Randall, 80 Hun, 229, reversed.

(Argued March 18, 1897; decided April 20, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the third judicial department, entered January 14, 1895, which affirmed a decree of the Surrogate's Court of Washington county.

On the 26th of April, 1890, Harvey Randall, of the county of Washington, died intestate, leaving as his next of kin two brothers, one of whom, Caleb Randall, was well acquainted with the affairs of the decedent, and five sisters, two of whom, Jane and Sarah Randall, had resided in Michigan for a long time and knew but little about the property left by their deceased brother. He left an estate consisting of real property worth about $16,000 and personal estate worth $52,563.51. On the 23d of August, 1890, Caleb Randall was appointed sole administrator, and he at once qualified and entered upon the discharge of his duties as such. September 17, 1891, the administrator voluntarily filed his petition for an accounting, and citations were duly issued for that purpose. Neither Sarah nor Jane Randall was cited, but subsequently, upon petition to the surrogate, they were allowed to intervene and become parties to the proceeding, against the objection of the administrator. Upon the hearing in Surrogate's Court it appeared that during the summer following their brother's death, Jane and Sarah Randall, who were both well advanced in years, came east and entered into negotiations with Caleb Randall for a sale to him of their respective interests in the real and personal property of the decedent. On the 19th of August, 1890, four days before Caleb Randall was appointed administrator, he paid to Jane Randall the sum of $5,500 in cash, and in consideration thereof she executed and delivered to him a deed dated that day, reciting a consideration of $1,600, by which she conveyed to him, with warranty, all her interest in the real estate of Harvey Randall; and also an assignment duly signed and sealed by her, reciting a consideration of $3,900, whereby she " sold, assigned, trans-ferred and set over" to Caleb Randall all her " right, title and interest in and to all the personal property and estate of " her deceased brother, Harvey Randall, "as heir at law, next of

kin, or otherwise," and authorized the said Caleb Randall " to collect and receive the same and every part and parcel thereof." These papers were put in evidence upon the trial by the counsel for Jane Randall, and were received over the objection of the administrator. A similar deed, dated October 7, 1890, from Sarah Randall to Caleb Randall, reciting a consideration of $1,600, and a similar assignment from Sarah to Caleb, of the same date, reciting a consideration of $4,400, were received in evidence in behalf of the administrator, who proved actual payment in cash of said sums, amounting to $6,000. Jane and Sarah both claimed that these papers were procured from them by Caleb through the false and fraudulent representation that all the property left by Harvey, both real and personal, was worth but $38,500, and much evidence was given by them tending to support this claim. Caleb gave a different version of the transaction, claiming that it was a fair purchase by him of the interests of his said sisters, made upon their urgent solicitation, and based upon what was regarded at the time as a fair valuation. The surrogate found that Caleb Randall, "at the time of the death of the decedent, knew the character, quality and value of the property, both real and personal, of which" he "died seized," and that "neither Jane nor Sarah * * * had any knowledge of the value" thereof, "except such as was acquired by them from the statements of the administrator, made to them together and separately ; that in such statements, made to both Sarah and Jane, the said Caleb, for the purpose of obtaining an undue, unjust and wrongful advantage over them, represented to them, and each of them, that the value of both the real and personal estate was much less than it really was, and that it was of much less value than he well knew it to be, and that they, and each of them, relied on such representations." By his decree, the surrogate, without formally setting aside the assignments, ignored them, and required Caleb Randall, as administrator, to account upon the same basis as if they had not been made, but he credited the amount of the consideration recited in the respective assignments as of the date when the money was paid.

Upon the settlement of the case, he was requested by· the administrator to find "that Sarah Randall, a sister of decedent, who had been permitted to intervene as an interested party herein, has no interest in this matter, she having sold and assigned all her interest in the personal estate of said decedent prior to this accounting." The surrogate refused to so find and the administrator excepted. A similar request was made as to Jane Randall, which the surrogate also refused to find, and an exception was taken.

Upon appeal to the General Term the decree of the surrogate was affirmed upon the ground that the administrator had no right to purchase the interests of Jane and Sarah Randall for his own benefit; that the attempt so to purchase inured to the benefit of the remaining heirs and next of kin of the decedent, and, as they did not appeal, that the administrator had not been injured by the decree of the surrogate and had no cause for an appeal therefrom.

Pending the appeal to the General Term Caleb Randall died and James H. Randall was appointed his administrator and duly substituted as a party. From the judgment of affirmance he appeals to this court.

*James M. Whitman* and *L. Fraser* for appellant. Surrogates and Surrogates' Courts derive none of their jurisdiction or power from the common law, but must find the warrant for all their doings in the Constitution and statutes. (*Stilwell* v. *Carpenter*, 59 N. Y. 414; *Bevan* v. *Cooper*, 72 N. Y. 317; *Riggs* v. *Cragg*, 89 N. Y. 479; *In re Underhill*, 117 N. Y. 471; Code Civ. Pro. § 2472, subds. 3, 4, § 2743.) The only tribunal which could avoid, vacate or set aside the assignments is one possessing general equity powers. (*Bevan* v. *Cooper*, 72 N. Y. 317; *Harris* v. *Ely*, 25 N. Y. 138; *Kenny* v. *Jackson*, 1 Hagg. 105; *McNulty* v. *Hurd*, 72 N. Y. 518; *In re Wagner*, 119 N. Y. 28; *In re Pruyn*, 141 N. Y. 544; *Sanders* v. *Soutter*, 126 N. Y. 193; *In re Monroe*, 142 N. Y. 484.) The law does not forbid, though it does not look upon with favor, a purchase by a trustee, directly of his *cestui*

*que trust.* (Lewin on Trusts [8th ed.], 487; Perry on Trusts, § 195; *Coles* v. *Trecothick*, 9 Ves. 244; *Gibson* v. *Jeyes*, 6 Ves. 277; *Randall* v. *Errington*, 10 Ves. 426; *Whichcote* v. *Laurence*, 3 Ves. 750; *Sanderson* v. *Walker*, 13 Ves. 601; *Ayliffe* v. *Murray*, 2 Atk. 59; *Brown* v. *Crowell*, 116 Mass. 461; *Graves* v. *Waterman*, 63 N. Y. 657.)

*S. W. Russell* for respondents. The sisters Jane and Sarah Randall, not having been included in the citation, and having appeared, were properly permitted by the surrogate to intervene and become parties to the accounting. (Code Civ. Pro. §§ 2514, 2728, 2729, 2730, 2731; *Clock* v. *Chadeagne*, 10 Hun, 97; *In re Martines*, 11 Abb. [N. C.] 50; *In re Read*, 41 Hun, 95.) The administrator admitted his liability to account by his petition to the surrogate, and he cannot, therefore, set up as a bar that he had settled with the next of kin. (*Kellett* v. *Rathbun*, 4 Paige, 108.) The administrator was not discharged from accounting by a written receipt in full of balance as one of the next of kin, nor by a conveyance by one of the next of kin to him. (*Harris* v. *Ely*, 25 N. Y. 138; *In re Read*, 41 Hun, 95.) In this accounting the surrogate had jurisdiction to settle the account of the administrator, determine the amount to be distributed, the persons to whom it should be distributed, and to direct the distribution thereof to the persons entitled to the same, according to their respective rights. (Code Civ. Pro. § 2472, subds. 3, 4, 6, § 2743; *Harris* v. *Ely*, 25 N. Y. 138; *Tappan* v. *M. E. Church*, 3 Dem. 187; *In re Orser*, 4 Civ. Pro. Rep. 129; *In re York*, 6 Civ. Pro. Rep. 245; *In re Read*, 41 Hun, 95; *In re Underhill*, 117 N. Y. 471.) The surrogate has jurisdiction to hear and determine any and all claims in which the executor or administrator is interested. The fact that others are jointly interested with him, or that he has acquired an additional interest by assignment after he became such, does not affect the authority of the surrogate to adjudicate in regard to it. (*Shakespeare* v. *Markham*, 72 N. Y. 400; 2 R. S. 88, § 33.)

VANN, J. The question presented by this appeal involves the power of a Surrogate's Court, upon the final settlement of the accounts of an administrator, to set aside or treat as invalid a written assignment, valid upon its face and made for a good consideration, whereby one of the next of kin assigned to him, as an individual, a distributive share in the estate.

This question, which was not passed upon by the learned General Term, has led to some difference of opinion in the courts. Those who defend the jurisdiction of the Surrogate's Court rely upon section 2472 of the Code of Civil Procedure, which relates to the general jurisdiction of that court and confers upon it the power, among other things, " to direct and control the conduct, and settle the accounts, of executors, administrators, and testamentary trustees ; * * * To enforce the payment of debts and legacies ; the distribution of the estates of decedents ; and the payment or delivery, by executors, administrators, and testamentary trustees, of money or other property in their possession, belonging to the estate. * * * To administer justice, in all matters relating to the affairs of decedents, according to the provisions of the statutes relating thereto. * * * This jurisdiction must be exercised in the cases, and in the manner, prescribed by statute." Reliance, to some extent, is had upon section 2481, relating to the incidental powers of the surrogate, which authorizes him " in court or out of court, as the case requires," to issue process, subpœnas and the like ; to adjourn, punish for contempt, sign, certify and exemplify records, and, in general, to regulate the practice in his court. Reference is made in particular to the last subdivision of the section, which is in these words: " 11. With respect to any matter not expressly provided for in the foregoing subdivisions of this section, to proceed, in all matters subject to the cognizance of his court, according to the course and practice of a court, having by the common law, jurisdiction of such matters, except as otherwise prescribed by statute ; and to exercise such incidental powers, as are necessary to carry into effect the powers expressly confer-

red." Section 2743, as it stood before the amendment of 1895, is also cited, and is as follows : " Where an account is judicially settled, as prescribed in this article, and any part of the estate remains, and is ready to be distributed to the creditors, legatees, next of kin, husband, or wife of the decedent, or their assigns, the decree must direct the payment and distribution thereof to the persons so entitled, according to their respective rights. If any person, who is a necessary party for that purpose, has not been cited or has not appeared, a supplemental citation must be issued, as prescribed in section 2727 of this act. Where the validity of a debt, claim or distributive share is not disputed or has been established, the decree must determine to whom it is payable, the sum to be paid by reason thereof, and all other questions concerning the same. With respect to the matters enumerated in this section, the decree is conclusive upon each party to the special proceeding, who was duly cited or appeared ; and upon every person deriving title from such a party."

The amendment of 1895 is not now important, as the decree in question was made in 1893.

The main reliance of the respondents is upon the following cases : *Harris* v. *Ely* (25 N. Y. 138) ; *Shakespeare* v. *Markham* (72 N. Y. 400) ; *Matter of Underhill* (117 N. Y. 471) ; *Matter of Read* (41 Hun, 95).

In *Harris* v. *Ely* it was held that an executor, who had never accounted in any way, could be required to account upon the application of the sole devisee and legatee, notwithstanding she had given him, without the actual payment of anything, a receipt in full to a certain date, reciting a nominal consideration, and had transferred all her estate to him upon a passive trust under an ante-nuptial settlement. The decision proceeded upon the theory that as there had been no accounting, either voluntary or judicial, the executor still held the assets as executor and not as trustee. The court said : " It was important to the legatee to ascertain the extent of the property which she had in the estate of the testator, so that it might be known what was in the hands of the trustee under

the ante-nuptial settlement. This could only be ascertained by a settlement or an accounting. Suppose, before any settlement or accounting, the respondent had been removed, and an executor *de bonis non* had been appointed according to statute : could there be any doubt but that the new executor would have been entitled to the assets not paid out to the creditors or legatees?  *   *   *   There was not, therefore, such a merger of titles, when the respondent became trustee, as to enable him to say that he did not any longer hold the assets as executor, but had become the owner of them in his character as trustee. *   *   *   It does not follow that if a sum should be found due her upon the taking of the account that the respondent would be ordered to pay it over to her. The nominal trust continues notwithstanding the late statutes concerning married women, and the decree ought probably to be that the executor should hold the amount remaining in his hands as trustee under the settlement." While the language of the court covered a somewhat wider field than the facts of the case, all that was decided is that the legatee, under the peculiar circumstances, was entitled to an accounting from the executor in order to learn what amount he held for her as trustee.

In *Shakespeare* v. *Markham* the executor presented a large claim for supporting the testator during his last years, and it was held that under the provisions of the Revised Statutes (2 R. S. 88, § 33) the surrogate had jurisdiction to hear and determine the claim of the executor against the estate, even if others were also interested in it, and he had acquired an additional interest by assignment after he became executor. Section 33 of the Revised Statutes was substantially reproduced in section 2739 of the Code, which, although repealed in 1893, was re-enacted in section 2731.

In *Matter of Underhill* it was simply held that upon an accounting by an executor, who had made an overpayment to a legatee, the surrogate had no power to render an affirmative judgment for the excess in favor of the executor and against the legatee.

*Matter of Read*, decided by the General Term of the late fifth department, clearly supports the position of the respondents, and aside from certain decisions in Surrogate's Court, where there is a conflict of authority, it is the only case cited that upholds the jurisdiction of that court to exercise the powers of a court of equity by setting aside a transfer of property on the ground of fraud.

There are many authorities relied upon by the appellant to show that the decree of the surrogate is illegal, because he had no power to try and determine the question of fraudulent transfer.

In *Stillwell* v. *Carpenter* (59 N. Y. 414) this court held that a surrogate has no jurisdiction, upon the final accounting of an executor, to set off a judgment belonging to the estate against a judgment presented as a claim against the estate. The court through Judge ANDREWS said : " The surrogate exercises a peculiar and limited jurisdiction. The general powers of a court of equity do not pertain to the Surrogate's Court, and the power to enforce the set off of mutual judgments, which is exercised upon equitable principles, and where the right often depends upon complicated facts and equities, is neither a convenient nor necessary one to be lodged with the surrogate. It is not expressly granted, nor does he take it, I think, as incident to the specific authority conferred upon him." The case was reargued and the same conclusion reached. (62 N. Y. 639.) The opinion is reported in full in 2 Abb. N. C. 238, where (p. 269) Judge FOLGER said : " The judgment is *prima facie* a valid and subsisting claim against the estate, and for the Surrogate's Court to entertain an allegation of the set-off and to hear and determine the existence of it, and to make application of it, is to exercise power which has not been given to it. The claim to a set-off of one judgment against another is a matter of equitable cognizance, and is treated as such in all courts which have the power to entertain it. * * * The Surrogate's Court has not such power in equity as enables it to step aside from its duty of distributing estates of deceased persons to entertain and hear and

determine what is tantamount to an action in equity for a set-off and application of different judgments."

In *Bevan v. Cooper* (72 N. Y. 317) the surrogate had adjudged that general legacies given by a will were not a charge upon real estate, and, while this court concurred in that conclusion, it reversed the decree because the surrogate had no jurisdiction to decide the question. The court said : " The question before us is one of equitable jurisdiction, and involving considerations and range of judicial power in its determination beyond what was meant to be conferred upon a Surrogate's Court.   *   *   *   When in good faith an executor resists the charging of a legacy upon the residuary estate in his hands, and shows that there exists a real question of fact or of law in his refusal to allow it, the jurisdiction of the surrogate ceases or has not attached. It is for the appropriate court of law or equity to adjudicate upon the matter. When determined there, the surrogate may go on with the accounting, or whatever other proceeding was before him when the question arose.   *   *   *   There is an intimation in *Harris* v. *Ely* (25 N. Y. 138, 142) that a surrogate, on an accounting, may try the validity of a release, but the remark was *obiter*, and it there appears (*Kenny* v. *Jackson*, 1 Hagg. Ec. 105) that the ecclesiastical court in England had not that power."

In *McNulty* v. *Hurd* (72 N. Y. 518) it was held that a judgment against a decedent, although disputed or rejected by his personal representatives, need not be sued over in order to authorize a decree for its payment by the surrogate. Through Chief Judge CHURCH, the court said : " We think that there is a distinction between judgments against the testator or intestate and other claims. A judgment is an adjudication of the rights of the parties in respect to the claim involved. It imports absolute verity. It cannot be disputed in the sense contemplated by the statute, any more than a judgment against the administrators. In that sense it is final and conclusive.   *   *   *   As to the next inquiry above suggested, we are of the opinion that the surrogate may inquire into, and pass upon, payments made to apply upon such judgments, and determine

the amount due thereon. He may also determine who is the owner of the judgment and entitled to the money.   \*   \*   \* Beyond this, the surrogate has no jurisdiction to try and determine questions in respect to the validity of judgments. There may be grounds for setting aside judgments, as if obtained by fraud, or where there has been an accord and satisfaction ; and there may be other grounds for relief such as is a set-off and the like, or the estate of the deceased may be entitled in equity to a release or discharge, either in whole or in part, from the judg-. ment, and as to all these, I can find no warrant in the statute for the exercise of jurisdiction by the surrogate to adjudicate them. To affirm such a power would open the door to a wide field of jurisdiction in law and equity by Surrogates' Courts, not contemplated by the statute, inconsistent with the limited powers conferred, and in some cases subversive of the right of trial by jury." In saying that a surrogate might determine who was the owner of a judgment, reference was doubtless had to the legal or apparent title, where there was no dispute. Otherwise, that conclusion would subvert the basis of the decision by opening the door to equitable jurisdiction which it sought to close.

In *Matter of Wagner* (119 N. Y. 28) an application had been made to compel the executor to file an inventory and render an account. It was alleged, in answer thereto, that the estate had been settled, " and a receipt, by each person entitled, of his or her full share," was produced. Judge GRAY, speaking for the court, said : "I think we should hold it as the true exposition of the law in such cases, where an application is made to the surrogate for an order compelling the executor or administrator to file an inventory, or to render an account, and it appears, in answer to it, that the applicant can have no right to such an order, by reason of his interest having been satisfied and extinguished by a settlement and distribution, whether in or out of court, or barred by a release, or otherwise, and the factum of a settlement, or of a release, or any act constituting the bar, is put in issue by the reply of the applicant, that the surrogate should dismiss the petition and remit the appli-

cant to his proceeding in a court having general equity powers to try out such an issue. That power the surrogate does not possess. * * * That general jurisdiction, which comprehends such a power as to nullify and set aside the deeds of parties for fraud, is not comprehended in the express grant of powers, nor is it incidental to the particular authority conferred."

In *Sanders* v. *Soutter* (126 N. Y. 193) it was held that a Surrogate's Court has no power to annul or set aside, on the ground of fraud, a release executed by parties interested in the estate to the executors thereof, and that such relief could only be obtained from a court having equity powers and jurisdiction. The court, through Judge O'BRIEN, said : " If, when this release was produced before the surrogate, the plaintiff, who was a party to the proceedings, could have, then and there, contested its validity, and could have given proof of the fraud now alleged, he must be confined to that remedy, and cannot be permitted to maintain an independent action to try a question which he should have tried before the surrogate. Equity will not interfere to set aside proceedings in an action in another court upon charges of fraud which could have been tried and decided in that action, or where relief is open in the action to the complaining party by motion, appeal or otherwise. * * * The complaint would not present a case for the interference of equity to annul the release and reinstate the proceedings for an accounting, except for the rule, which seems to be well settled upon authority, that the surrogate was without power to try the question of fraud in procuring the release, or to pass upon its invalidity, on account of the methods claimed to have been used in procuring it. The Surrogate's Court possesses such jurisdiction only as is expressly conferred by statute, or necessarily implied from the power conferred, and that does not include the power to annul or set aside a release made between parties interested in an estate and the executors on the ground of fraud. In order to obtain such relief, resort must be had to a court possessing general equity powers and jurisdiction." (See, also,

*Matter of Pruyn*, 141 N. Y. 544, and *Matter of Monroe*, 142 N. Y. 484.) Some of the decisions were made under the Revised Statutes and others under the Code of Civil Procedure, but there is no substantial difference between the old statute and the new with reference to the point under discussion. They establish the principle that the general powers of a court of equity do not belong to a Surrogate's Court. While there is jurisdiction to settle the accounts of executors, enforce distribution and direct payment to the persons entitled as "creditors, legatees, next of kin, husband or wife of the decedent, or their assigns," the statute impliedly limits the power to direct payment to those cases "where the validity of a debt, claim or distributive share is not disputed, or has been established." Otherwise the words thus quoted from section 2743 would be unnecessary, for if the power existed to decree payment where there was a dispute, it would clearly exist where there was no dispute. It cannot be denied that a distributive share of an estate may be transferred by assignment, for the statute recognizes the right, and where the validity of the assignment is undisputed, the court may decree distribution accordingly. When, however, the validity of the assignment is attacked on the ground that it was procured by fraud, a question is presented requiring for its determination the general power of a court of equity and, in some cases, the trial of issues by a jury. The Surrogate's Court was not created for that purpose and has not been given that power. It is not claimed that such power has been expressly conferred, and the argument in favor of its existence, by implication, is opposed by the current of authority, as well as the improbability that the legislature, in view of the trend of judicial decisions, would leave to inference a subject of such moment. When, therefore, upon an accounting in Surrogate's Court the same distributive share is claimed by two persons, one by original title and the other by an assignment, apparently valid, resort must be had to a court of equity to settle the dispute, for the surrogate is without power to determine the question. A genuine controversy as to the validity of the

assignment prevents the surrogate from directing payment to either claimant until the one or the other has " established " his claim before the proper tribunal.

We think that the learned surrogate exceeded his powers when he disregarded and practically set aside the written assignments, made by Jane and Sarah Randall, of their distributive shares in the estate of the decedent. The judgment of the General Term and the decree of the surrogate, so far as appealed from, should, therefore, be reversed, with costs, and the matter remitted to the Surrogate's Court of Washington county, with directions to proceed in accordance with this decision, and with leave to grant a stay of proceedings for a reasonable time to enable the respondents to establish their rights by an action in the Supreme Court.

All concur.

Judgment reversed.