In the Matter of the Accounting of the UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee under the Will of HELENA ROGERS, Deceased, Respondent.

JOHN FERDON ROGERS, Appellant.

1. SURROGATE'S COURT — TESTAMENTARY TRUSTS — SURROGATE HAS JURISDICTION TO DETERMINE WHETHER TESTAMENTARY TRUST HAS BEEN TERMINATED UNDER THE STATUTES (L. 1893, CH. 452; L. 1896, CH. 547; L. 1897, CH. 417). A surrogate has jurisdiction over testamentary trustees (Code Civ. Pro. §§ 2802 *et seq.*), and has the power under section 2812 to determine any controversy arising upon the settlement of the account of a trustee concerning the right of any party to share in the money or other personal property to be distributed; and where a trust has been terminated under the statutes (L. 1893, ch. 452) and the Real and Personal Property Laws (L. 1896, ch. 547, and L. 1897, ch. 417), by which certain trusts may be terminated, by the release of the beneficiary entitled to the income thereof, upon compliance with specified requirements of such statutes, the surrogate must decree a proper distribution of the estate exactly the same as if the trust had terminated under the provisions of the will, and if the claim that the trust has ceased, by reason of releases pur-

porting to be executed in compliance with such statutes, is challenged, he has the power to decide and must decide that issue.

2. TESTAMENTARY TRUSTS — WHEN LIFE TENANT THEREOF MAY NOT RELEASE SAME TO REMAINDERMAN. Where the life beneficiary of a testamentary trust is not entitled to the whole or any definite part of the income of the trust, but only to such part thereof as may be necessary for his support, the surplus thereof to be paid to the guardian of his children during their minority and to such children personally after attaining their majority, the principal of the trust to go to such children and their issue, if any, upon the death of the life tenant, and one of the children, after becoming of full age, conveyed his interest in the estate to his father, who thereupon released to himself his income in the share of the estate so conveyed to him, and then conveyed such share back to said son, such release and conveyance does not terminate the trust, since, under the statutes in question, the life beneficiary of a trust fund cannot release his interest in the income thereof unless his title to the remainder is absolute and indefeasible and not subject to be divested or to diminution on the occurrence of subsequent contingencies.

*Matter of United States Trust Co.*, 80 App. Div. 77, affirmed.

(Argued April 29, 1903; decided June 9, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, made February 13, 1903, which reversed a decree of the New York County Surrogate's Court settling the accounts of the petitioner herein as trustee under the will of Helena Rogers, deceased.

The facts, so far as material, are stated in the opinion.

*Charles L. Pashley* for appellant. Each of the grandchildren of the testatrix took a vested remainder in one-third of her estate upon attaining majority. (*Nelson* v. *Russell*, 135 N. Y. 137; *Matter of Brown*, 154 N. Y. 313; *Wilber* v. *Wilber*, 165 N. Y. 451; *Dougherty* v. *Thompson*, 167 N. Y. 484; *Colby* v. *Doty*, 158 N. Y. 323.) The estate is not subject to open and let in afterborn grandchildren. (*Wetmore* v. *Parker*, 52 N. Y. 464; *Matter of Smith*, 131 N. Y. 247; *Schettler* v. *Smith*, 41 N. Y. 338; *Nellis* v. *Nellis*, 99 N. Y. 505; *Matter of Brown*, 154 N. Y. 313; *Matter of Ver-*

*planck*, 91 N. Y. 445; *Goebel* v. *Wolf*, 113 N. Y. 415; *Dubois* v. *Ray*, 35 N. Y. 171; *Hopkins* v. *Kent;* 145 N. Y. 367; *Doubleday* v. *Newton*, 27 Barb. 431.) The absolute estate given to the grandchildren cannot be cut down to a defeasible estate by subsequent ambiguous words. (*Banzer* v. *Banzer*, 156 N. Y. 429; *Goodwin* v. *Goodwin*, 154 N. Y. 286; *Byrnes* v. *Stillwell*, 103 N. Y. 460; *Freeman* v. *Coit*, 96 N. Y. 63; *Campbell* v. *Beaumont*, 91 N. Y. 465; *Clark* v. *Leupp*, 88 N. Y. 231; *Roseboom* v. *Roseboom*, 81 N. Y. 356; *Williams* v. *Jones*, 166 N. Y. 533; *Smith* v. *Edwards*, 88 N. Y. 109.) The interest of Hoffman Rogers in the income is, in its nature, assignable, and there is no difference between a trust "to apply" and a trust "to pay over." (*Thurber* v. *Chambers*, 66 N. Y. 43; *Sherman* v. *Skuse*, 166 N. Y. 345; *Campbell* v. *Foster*, 35 N. Y. 371; *Bryan* v. *Knickerbocker*, 1 Barb. Ch. 409; *Leggett* v. *Perkins*, 2 N. Y. 297; *Hall* v. *W. T. Co.*, 34 N. Y. 287; *Hakes'* v. *Peck*, 30 How. Pr. 104; *Field* v. *Mayor, etc.*, 6 N. Y. 179; *Devlin* v. *Mayor, etc.*, 63 N. Y. 15; *Jones* v. *Mayor, etc.*, 90 N. Y. 390.) Hoffman Rogers was entitled to the entire income of the trust estate at the time he executed the release. (*Holden* v. *Strong*, 116 N. Y. 470; *Bryan* v. *Knickerbocker*, 1 Barb. Ch. 426.) All future rights in the income vested in Hoffman Rogers by assignment. (*Field* v. *Mayor, etc.*, 6 N. Y. 179; *Bank* v. *Strever*, 18 N. Y. 510; *Johnson* v. *R. R. Co.*, 49 N. Y. 463; *Mills* v. *Mills*, 50 App. Div. 227; *Short* v. *Wilson*, 13 Johns. 33; *Brewster* v. *Brewster*, 4 Sandf. Ch. 22; *Spencer* v. *Myers*, 150 N. Y. 275.) The Surrogate's Court has jurisdiction to determine the legal effect of the will and conveyances. (*Hard* v. *Ashley*, 117 N. Y. 611; Code Civ. Pro. §§ 2472, 2481, 2807, 2811; *Van Sinderin* v. *Lawrence*, 50 Hun, 272; *Riggs* v. *Cragg*, 89 N. Y. 492; *Matter of Verplanck*, 91 N. Y. 439; *Purdy* v. *Hayt*, 92 N. Y. 446; *Garlock* v. *Vandevoort*, 128 N. Y. 374; *Sheldon* v. *Bliss*, 8 N. Y. 34; *Matter of Young*, 92 N. Y. 238; *Matter of Fox*, 52 N. Y. 530; *Matter of Ullmann*, 137 N. Y. 407.)

*Edward W. Sheldon* and *George L. Shearer* for respondent. The Surrogate's Court had not jurisdiction to decree that the trusts under the will had been terminated as to one-third of the residuary estate. (*Matter of Hawley,* 104 N. Y. 250; *Matter of Woodworth,* 6 Dem. 156; *Shumway* v. *Cooper,* 16 Barb. 556; *Matter of McKay,* 37 Misc. Rep. 590; *Duryea* v. *Mackey,* 151 N. Y. 204.)  The remainders in the trust estate are not absolutely vested, but are subject (1) to be divested by the death of any grandchild before Hoffman Rogers, without leaving issue, and (2) to open and let in children born to him after the testatrix's death. (*Cochrane* v. *Kip,* 19 App. Div. 272; *Cochrane* v. *Schell,* 140 N. Y. 516; *Goodwin* v. *Coddington,* 154 N. Y. 283.)

CULLEN, J.  The question presented by this appeal is whether a conveyance by a remainderman to the party, who is claimed to be the equitable life tenant of a trust fund, operated, under the provisions of the Real and Personal Property Laws, to terminate the trust as to the share so conveyed and to entitle the life tenant to the *corpus* of such share.  Helena Rogers, who died May, 1896, by her will gave her residuary estate of both realty and personalty to the United States Trust Company in substance upon the following trust:  To pay to her son, Hoffman Rogers, during his natural life, so much of the income as might be necessary for his support and maintenance, and the surplus of such income to the guardian of the children of said son during their minority and to the children personally after attaining age. After the death of her said son, and as her grandchildren severally became of age, she gave each of said grandchildren an equal share of said trust estate, with the provision that in the case of the death of any grandchild before reaching the age of twenty-one years, leaving issue, the issue should take their parents' share, but in case of death without issue the share should go to the surviving grandchildren.  The testator's son, Hoffman Rogers, has three children, all now of full age.  March 27th, 1902, John F. Rogers, one of said

grandchildren, conveyed his interest in the estate of the testator to his father, Hoffman Rogers. Thereupon said Hoffman Rogers released to himself his income in the share of the estate so conveyed to him, and then conveyed back to John F. Rogers the said share. Thereafter, John F. Rogers instituted these proceedings in the Surrogate's Court for a judicial settlement of the trustee's account and to compel the payment to him of one-third of the *corpus* of the estate. The accounting was referred in the first instance to a referee, who reported that the trust had not terminated as to the share conveyed by John F. Rogers to his father and then received back from him. The surrogate held to the contrary and decreed payment of the share to the petitioner. The Appellate Division of the first department reversed the decree of the surrogate and affirmed the decision of the referee.

While we think the Appellate Division properly disposed of the case we cannot concur with it in the view that the surrogate had no power to entertain the application. It is doubtless true that a surrogate has no general equitable jurisdiction and, for the matter of that, no general legal jurisdiction. But in so far as it is necessary to discharge the duties and functions conferred upon him by statute and to make proper orders and decrees in matters of which he has jurisdiction, he has all powers, legal or equitable, necessary to accomplish that result. This was the ground on which *Matter of Verplanck* (91 N. Y. 439) proceeded. By sections 2802 *et seq.* jurisdiction over testamentary trustees is conferred on surrogates. By section 2812 the surrogate is empowered to determine any controversy arising on the settlement of the account of a trustee concerning the right of any party to share in the money or other personal property to be distributed. Since the enactment of the statute of 1893 (Chap. 452) and the Real and Personal Property Laws (Chap. 547, Laws of 1896, and chap. 417, Laws of 1897) certain trusts are made terminable on compliance with specified requirements of the statutes. When the necessary conveyances or releases are executed it requires no action of a court of equity to abrogate the trust, but the

trust terminates as a matter of law.    If the case falls within the
statute the surrogate must decree a proper distribution of the
estate exactly the same as if the trust had terminated under
the provisions of the will, and if the claim that the trust has
ceased is challenged he must decide that issue in one case just
as in the other.    The contention that the surrogate cannot
look beyond the will to the subsequent acts of the parties in
interest is in direct opposition to the adjudged cases.    It was
made in *Matter of Wagner* (119 N. Y. 28), where it was con-
tended that the surrogate must require an executor to file an
inventory and render an account on the demand of a party in
interest under the will, although that party had executed a
release to the executor.    It was argued that the surrogate
could take no cognizance of the release.    This court held, to
the contrary, that the release was a bar to the application for
an accounting.    It must be borne in mind that there is no
attempt made here to impeach or set aside the conveyances.
The Surrogate's Court would have no jurisdiction over such
issues and to get that relief it would be necessary to resort to
a court of equity.    The sole question here is, their validity
being conceded, what, under the statute, is their effect on the
trust.    In *Sanders* v. *Soutter* (126 N. Y. 193) the right to
maintain an action in equity for an accounting was sustained
because the parties had executed releases which they claimed
were obtained by fraud, and it was held, not that the surrogate
could ignore those releases, but that he must recognize them
and that they would be conclusive against the parties in the
Surrogate's Court until set aside by a court of equity.    The
whole subject is fully reviewed in *Matter of Randall* (152
N. Y. 508).    Some of the beneficiaries had made assign-
ments of their interests.    It was held that the surrogate could
not ignore them but must give effect to them and relief from
their effect could be had only in a court of equity.    In this
case the sole question before the surrogate was the effect of
the conveyances.

On the merits we are in accord with the Appellate Division
and the referee.    It is unnecessary to discuss the provisions of

the statute of 1893, as the parties never sought to avail themselves of the provisions of the statute while it was in force. There was no privilege in the equitable life tenant to terminate the trust, except upon his acquisition of title to the remainder after the trust term. This was in no sense a vested property right. The only property right the life tenant had was the right to receive the income. The repeal of the statute in no way affected this right, nor has it in any way affected the rights of the remaindermen whose property then, as now, is subject to alienation. We think the case does not fall within the provisions of the Real and Personal Property Acts. Those statutes provide: " Whenever a beneficiary in a trust for the receipt of income of personal property is entitled to a remainder of the whole or a part of the principal fund so held in trust, subject to his beneficial estate for life or lives, or a shorter term, he may release his interest in such income, and thereupon the estate of the trustee shall cease in that part of such principal fund to which such beneficiary has become entitled in remainder, and such trust estate merges in such remainder." Hoffman Rogers, under the will, was not entitled to the whole or any definite part of the income, but only to such part as might be necessary for his support. Such amount would naturally vary from time to time, dependent on the requirements of the beneficiary and the productiveness of the fund. Nor did the conveyance from his son help the matter. In the discussion of this subject we entirely agree with the learned referee. A further and conclusive answer to the claim of the appellant that the trust terminated is, as we construe the will, that the remainders are liable to open and let in the afterborn children of Hoffman Rogers. It is stated by Mr. Schouler (Wills, sec. 530): " Hence the English rule, confirmed by many American precedents, that the devise or bequest of a *corpus* or aggregate fund to children as a class, where the gift is not immediate, vests in all the children in existence at the testator's death, but so as to open and let in children who may come into existence afterwards at any time before the fund is distributable." Mr.

Jarman states the rule to be (2 Wills, 168) : " Where a particular estate or interest is carved out, with a gift over to the children of the person taking that interest, or the children of any other person, such gift will embrace not only the objects living at the death of the testator, but all who may subsequently come into existence before the period of distribution." (See *Byrnes* v. *Stilwell*, 103 N. Y. 453 ; *Matter of Brown*, 154 N. Y. 313.) There is nothing in this will to take the case without the general rule. If it be assumed that the provision of the will that the share of any grandchild dying before he reaches the age of twenty-one years without issue, shall go to the surviving grandchildren, involves an illegal suspension as to the share of any grandchild born after the death of the testator, that direction is plainly severable from the other provisions of the will and does not affect their validity. Whatever may be in other respects the true construction of the Real and Personal Property Laws providing for the termination of trusts, plainly they do not authorize the destruction of the property rights of persons who may thereafter come into being. For a life beneficiary of a trust fund to fall within the terms of this statute as " entitled to remainder of the whole or part of the principal fund so held in trust," his title to such remainder must be absolute and indefeasible, not subject to be divested or to diminution on the occurrence of subsequent contingencies.

The order appealed from should be affirmed, with costs.

VANN, J. (concurring in result). While I concur in the result announced by the prevailing opinion, I dissent from the view that the surrogate had power to entertain the application.

Section 2743 of the Code of Civil Procedure authorizes a decree for payment and distribution upon the judicial settlement of the account of an executor or administrator. It provides that " where the validity of the debt, claim or distributive share is admitted or has been established upon the accounting or other proceeding in the Surrogate's Court or other court of

competent jurisdiction, the decree must determine to whom it is payable, the sum to be paid by reason thereof and all other questions concerning the same." Under this section, which has been changed somewhat of late, but not so as to increase the jurisdiction of the surrogate, it has been repeatedly held that the surrogate has no power to determine the validity of an instrument executed for the disposition of a distributive share and that the surrogate has no general equitable jurisdiction. (*Matter of Hodgman*, 11 App. Div. 344; affirmed, 161 N. Y. 627; *Matter of Randall*, 152 N. Y. 508; *Matter of Wagner*, 119 N. Y. 28, 36; *Sanders* v. *Soutter*, 126 N. Y. 193; *McNulty* v. *Hurd*, 72 N. Y. 518; *Bevan* v. *Cooper*, 72 N. Y. 317; *Stilwell* v. *Carpenter*, 59 N. Y. 414.)

If the accounting had been by an executor or administrator we could not sustain the jurisdiction of the surrogate to pass upon the effect of the releases under the statutes without violating the spirit of these decisions. While the surrogate can construe a will, this controversy involved something more than that, for it required him to decide as to the validity and effect of the instruments designed to subvert the trust which were the foundation of the claim of John Ferdon Rogers. It depended upon matters outside of the will and involved the right to set aside, wholly or in part, the three conveyances on the one hand, or on the other to hold they were valid and adjudge that the effect thereof was to terminate the trust. The surrogate had to decide whether there was still a trust. While no question of fact was involved an important question of law arose requiring the exercise of the peculiar powers of a court of equity to pass upon the existence of a trust, the validity of conveyances, the construction of statutes and the like.

It is, however, claimed that the surrogate has more power upon the judicial settlement of the account of testamentary trustees than upon the settlement of the accounts of executors and administrators. That question depends upon the construction of section 2812 of the Code of Civil Procedure, which provides that " upon a judicial settlement of the

account of a testamentary trustee a controversy which arises respecting the right of a party to share in the money or other personal property to be paid, distributed, or delivered over, must be determined in the same manner as other issues are determined."

This section must be construed in one of two ways : (1) If a controversy arises the surrogate must determine it, even if it involves the decision of questions of fact, including, for instance, the question whether the distributive share has been fraudulently transferred and the like. This construction would clothe the surrogate with the broad power of a court of equity so far as any controversy arose "respecting the right of a party to share in the money   *   *   *   to be distributed." The power would not be limited to questions of law, but would involve all questions of fact, the determination of which was necessary to settle the controversy. There is no limitation to questions of law. There is nothing to prevent the surrogate from deciding a question of forgery, even if one of the parties demanded a jury trial. There is no classification of controversies and no distinction made between those involving questions of fact or of law only, but if any controversy arises, the surrogate, according to this construction, has power to decide it.

(2) The other construction is that a controversy which arises as to the distributive share must be tried by the surrogate, provided it is such an issue as a surrogate, according to the existing law and practice, can try, but if not, it must be determined by an action brought for the purpose, or in the same manner as such issues are usually tried. The issue might require a trial by jury, or it might require the investigation of complicated questions of fact, such as fraud and the like. It might involve the general power of a court of equity and include the most difficult questions of law. According to this construction, however, the issues could be tried in a tribunal in which such issues are usually tried, leaving the surrogate the right to try all questions expressly confided to him by statute.

I prefer this construction because it is unreasonable to sup-
pose that the legislature intended to give the surrogate only a
limited power upon an accounting by an executor and an
unlimited power on an accounting by a trustee.   Did the
legislature intend to make him a surrogate as to executors and
a chancellor as to testamentary trustees, when there is no
reason for such a distinction ?   Suppose the executor was also
a testamentary trustee, as is frequently the case, and, as is
sometimes the case, that he had never accounted in either
capacity, but had separated the amount of the trust fund from
the rest of the estate and had appropriated it to the trust by
investing it in his name as trustee.   Suppose also that he peti-
tioned for an accounting in both capacities at the same time
but in separate proceedings and that there was a question
common to both, should we hold that the surrogate could
decide it in the one but not in the other ?

This construction is confirmed by the remaining portion of
section 2812 which provides that " if such a controversy
remains undetermined, after the determination of all other ques-
tions upon which the distribution of the fund, or the delivery
of the personal property depends, the decree must direct that
a sum, sufficient to satisfy the claim in controversy, or the pro-
portion to which it is entitled," shall be retained in the hands
of the accounting party or deposited "subject to the surro-
gate's order, for the purpose of being applied to the payment
of the claim, when it is due, recovered or settled."

Why is such care taken to withhold the fund from distribu-
tion, so far as it is affected by the controversy which arises ?
Why not decide the controversy and end it if the surrogate
has the power ?   Why postpone matters, unless it is necessary
to have some other tribunal settle the controversy ?   If the
surrogate has the power to determine it, the last part of the
section is meaningless and unnecessary, but if he has not that
power, its function is useful and necessary, for it gives the
parties time to settle the controversy by an action in equity
and yet preserve the fund intact for the person entitled to it
when the controversy is settled.   The section does not say

that the surrogate is to decide the controversy, yet if it was intended to give him that power why was it not said in so many words? It certainly would simplify matters to enact that if a controversy arose as to the distributive share, the surrogate should decide it. Instead of saying this, it is provided that the controversy " must be determined in the same manner as other issues are determined." It does not say in the same manner as other issues are determined by the surrogate and by implication, clear to me at least, it means in the same manner as such issues are decided by the tribunals having jurisdiction thereof. This is the construction given by Judge Daniels with the concurrence of Judge Van Brunt and Judge Brady in *Van Sinderen* v. *Lawrence* (50 Hun, 272). It is the construction given by the court below and it is the construction which I think should be adopted by this court.

Parker, Ch. J., O'Brien and Werner, JJ., concur with Cullen, J.; Vann, J., reads opinion concurring in result, and Gray, J., concurs; Bartlett, J., absent.

Order affirmed.