# Norwood *v.* Tyson *et al.*

*Bill in Equity for Injunction and for the Specific Performance of Contract.*

1. *Settlement of estate; when bill to enjoin proceedings in probate court without equity.*—Where a proceeding is instituted in a probate court by a legatee under a will against an executor of said will, seeking to hold said executor indebted to the estate for money borrowed from his testatrix, a bill filed in a court of equity by said executor to have the proceeding in the probate court enjoined, which avers that there has been a discharge of the indebtedness and surrender of the note evidencing the same by the testatrix to said executor, and further avers that as to this claim, the legatee who instituted the proceedings in the probate court, would set up that such discharge and surrender were secured by the complainant by undue influence exerted upon the testatrix, and prays in addition to the injunction, to have the issue determined in the chancery court, is without equity.

2. *Jurisdiction of probate court; can not enforce specific performance of contract.*—A probate court has no jurisdiction to effectuate or enforce the specific performance of a contract.

3. *Specific performance of contract; equity jurisdiction.*—A contract entered into between the executors of a will and the

[Norwood v. Tyson *et al.*]

legatees thereunder for a speedy settlement of the affairs of said estate, which stipulates that receipts should be given by the legatees for their distributive share in the testatrix's estate, and after the expiration of twelve months these receipts should be filed in the probate court, and upon such receipts the final settlement of the executorship should be had and the executors discharged, is such a contract as can not be effectuated by the probate court in a proceeding instituted in said court by one of the legatees seeking to charge one of the executors with the amount of a note executed by him to the testatrix; and a bill filed in a court of chancery seeking to have such contract specifically enforced contains equity.

4. *Specific enforcement of contract; agreement for the rendition of judgment can be enforced.*—Contracts involving the rendition of judgments and decrees and the like, may be specifically enforced.

5. *Same; same; equity of bill.*—Where the object of a contract can be accomplished in some other way, it is no defense to a bill for specific performance, that the contract can not be enforced in the precise manner stipulated therein.

6. *Same; same.*—Where a bill in equity is filed for the specific performance of a contract, which is purely of equitable cognizance, the fact that there is sought, in addition to this relief, the effectuation of a claim which could be determined in a court of law, is not sufficient to take away from the chancery court the jurisdiction it had acquired for the specific performance of the contract.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

On the 13th day of October, 1900, Mrs. M. M. Tyson died leaving her property by will in equal proportions to her children, Virginia Norwood, S. L. Tyson, John R. Tyson as trustee for his children, and Silas Tyson as trustee for his children. John R. Tyson, Silas Tyson, S. L. Tyson and Joseph Norwood were appointed and qualified as executors.

In March, 1902, Silas Tyson, as trustee for his children, filed in the probate court of Montgomery county a petition praying that a citation issue to Joseph Norwood, as one of the executors of said estate, requiring him to file his accounts and vouchers for a final settlement.

[Norwood v. Tyson *et al*.]

On the 5th day of April, 1902, Joseph Norwood appeared and filed a petition setting up an agreed settlement between the parties, and the fact that it was then agreed that no formal settlement should be had, praying that said agreement might be enforced and he discharged as said executor.

Subsequently Silas Tyson, as trustee, excepted to the paper filed by Joseph Norwood, and moved to charge him with the amount of a note for $13,200, executed by said Norwood to Mrs. Tyson, his testatrix, on the 10th day of January, 1900, payable on January 10th, 1901, for money borrowed by said Norwood from the decedent; admitting that said estate had been otherwise settled between the parties interested therein.

On the 7th day of April, 1902, Joseph Norwood filed the present bill, praying that said Silas Tyson as said trustee be enjoined from proceeding further to compel him to settle in the probate court, and from seeking to charge him with said note of $13,200; and that the alleged agreement for final settlement between the parties be specifically enforced. There was a prayer for general relief  The other facts averred in the bill are sufficiently set forth in the opinion. A temporary injunction was issued upon the complainant giving the bond required. The defendants, Silas Tyson and John R. Tyson, filed separate answers to the bill, and also demurred to the bill as a whole. The said respondents also moved to dismiss the bill for the want of equity and moved the court to dissolve the injunction for the want of equity in the bill.

Upon the submission of the cause upon the demurrers, the motion to dismiss the bill for the want of equity, and the motion to dissolve the injunction, the judge of the city court, sitting as chancellor, rendered a decree, sustaining the demurrer, sustaining the motion to dismiss the bill for want of equity, and the motion to dissolve the injunction, and ordered the injunction dissolved and the bill dismissed. From this decree the complainant appeals, and assigns the rendition thereof as error.

JOHN M. CHILTON, for appellant.—Although the defendant to a suit at law may have a full defense in the

particular case, yet if he has rights growing out of the subject matter as against the plaintiff in the suit at law, which, on account of their equitable character or the absence of parties whom he has a right to have concluded in respect to the same subject matter, then the existe : e of a defense does not defeat the right to apply to a court of equity in order to determine and settle in one suit the entire controversy.—*Ray's Admr. v. Womble,* 56 Ala. 32; *Lockett's Admr. v. Hurt,* 57 Ala. 198; *Harris v. Miller,* 71 Ala. 33; Pom. Eq. Juris., §§ 179, *et seq.*

Where the same party has, or claims to have, some common right against a number of persons, the establishment of what would regularly require a separate action brought by him against each of these persons, or brought by each of them against him, can be effectuated in a court of equity, and instead of several suits at law he may procure the whole to be determined in one suit brought by himself against all the adverse claimants as co-defendants.—1 Pom. Eq. Jur., § 245; 1 Beach on Injunctions, § 527; *New York Trust Co. v. Blydenstein,* 70 Hun, 216; 3 Mayfield's Digest, 240, 245; *Baker v. Hawkins,* 14 R. I. 359

If jurisdiction of the subject matter did not exist, it could not be conferred by consent, to say nothing of a waiver, by Norwood's answer.—*Harrison & Sanders v. Harrison,* 20 Ala. 629; *Burd v. McDaniel,* 26 Ala. 582; *Clarke v. Rose,* 75 Ala. 129; 20 Ala. 445; 28 Ala. 453; 7 Port. 737; *Little v. Fitts,* 33 Ala. 343. "A want of jurisdiction of the subject matter is not aided by a plea to the merits."—3 Mayfield's Dig. 1196, § 59; *Wyatt v. Judge,* 7 Port. 37; *Merrill v. Jones,* 8 Port. 554; *Winn v. Freele,* 19 Ala. 171; *Field's v. Walker,* 23 Ala. 155; *Jeffries v. Harbin,* 20 Ala. 387; *Benford v. Daniels,* 20 Ala. 445; *Harrison v. Harrison,* 20 Ala. 629; *Talliaferro v. Bassett,* 3 Ala. 670; *Little v. Fitts,* 33 Ala. 343.

The probate court is a court of law, not of chancery, and it has many times been affirmed in this court that that court does not possess chancery powers.—*Moore v. Winston's Admr.,* 66 Ala. 302.

The utmost extent to which its jurisdiction could have been exercised in the way of recognizing the agreed set-

tlement, would have been to refuse the petition of Silas Tyson to compel a settlement. This would have left Norwood still open to attack when, by his agreement, he was entitled to his discharge.—*Matter of Wagner,* 119 N. Y. 28; *Matter of Randall,* 152 N. Y. 508; *Matter of Pruyn,* 141 N. Y. 544.

The court will not examine the contract as a court of law will examine it, to ascertain what the parties have expressed, but what in truth was the real intention of the parties, and will carry that intention into effect.— *Irwin v. Bailey,* 72 Ala. 467; *Moore v. Gordon,* 72 Ala. 79; *Derrick v. Monette,* 73 Ala. 75.

A contract looking towards the rendition of a judgment or decree can be specifically enforced in a court of equity. "Specific performance as applied to contracts, has been defined 'the actual accomplishment of a contract by the party bound to fulfill it,' * * * 'but as the exact fulfillment of an agreement according to its letter by the party is not always practicable, the phrase may mean, in a given case not *literal,* but substantial performance.' "—1 Waterman on Specific Performance, §§ 1, 107; *Chambers v. Robbins,* 28 Conn. 522; *Kent v. Richards,* 3 Md. 392; *Reilley v. Miami Export Co.,* 5 Ohio, 333; *Newman v. Meek,* S. & M. Ch. 331; *Dickerson v. McDermont,* 13 Texas, 248.

GUNTER & GUNTER and HORACE STRINGFELLOW, *contra.* The contract averred in the bill of complaint was not such a contract as could be specifically performed. The fraud which may prevent specific performance may be had by representation or concealment, and the latter may consist of mere omission as to facts without any intention of deceiving or misleading.—Pomeroy on Contracts, § 268.

It cannot be doubted that if appellant owed the note for $13,200 to the testatrix at the time of her death it became money in his hands upon his qualifying as said executor, "without reference to his solvency or insolvency, which it was his duty to account for and with which he was chargeable."—*Arnold Admr. v. Arnold Admr.,* 124 Ala. 552. Nor can it be doubted that the burden of proof is upon the executor debtor to establish

that this note was not a binding subsisting obligation upon him at the date of Mrs. Tyson's death, of which his possession of the note is not evidence. It must be done "by showing that he had paid it to his testatrix or by making proof of some other fact which absolved his liability upon it during her life time."—*Arnold v. Arnold, supra.*

"The rule of law is well settled that when in transactions *inter vivos* a party stands in confidential relations to another; such as that of parent and child, guardian and ward, attorney and client, priest and penitent, etc., if the dominant party receives a benefit or donation during the existence of such relation, the party reposing the confidence, on seasonable application to a court of equity, may obtain relief from the burdens and duties imposed simply by showing the transaction and the confidential relation; the presumption of law being that as long as the relation lasts the transaction is the result of undue influence; and to make the transaction good in law there must be a severance of such relations at least for the time being and the party reposing the confidence must have independent advice. In such cases the burden of proof rests upon the party claiming the benefit under the transaction to repel the presumption thus created by the law by showing a severance of such relation, and this must be done by the interposition of competent and independent advice."*McQueen v. Wilson,* 131 Ala. 606.

The law does not forbid the rendition of gratuitous services nor does it forbid the acceptance of them. "*Prima facie* valuable manual services rendered by one person for another, the benefits of which are knowingly accepted and enjoyed by the latter, were not intended or understood to be a donation," and the law will presume an obligation to pay for such service; but where "there is something in the relation of the parties, the nature of the service rendered, or other circumstances to rebut the presumption," the law will not imply an obligation to pay.—*Hood Admr. v. League,* 102 Ala. 230; Wood on Master & Servant, § 72.

It is clear from the "relation of the parties the na-

ture of the service rendered and also from the other circumstances" that the services rendered by appellant were intended and understood as a donation, and that when Mrs. Tyson, in the endorsement upon the note, said, "For and in consideration of the services rendered me by *my son-in-law*," if it was her own language she meant as an appreciation of the service rendered. All the circumstances show that there was no sense of a legal obligation to be discharged by either party. "The law will never permit a friendly act, or such as was intended to be an act of kindness or benevolence to be afterward converted into a pecuniary demand." Particularly is this true where the relations between the parties are such as is termed confidential, and where the person against whom this promise is to be implied is deceased.—*James v. O'Driscoll,* 2 Bay, (S. C.), 101; Wood on Master & Servant, § 72, p. 115.

Having distributed, a court of equity will assume that it was in discharge of an assumed duty, and the trustee will not be allowed to say to the contrary nor to claim any benefit to himself from the fact of such distribution. "If a person claiming estoppel was legally bound to do what he did, there is no estoppel in his favor."—*Oregon v. Stewart,* 60 N. Y. 413; *Turner v. Waldo,* 40 Vt. 51.

There is nothing in the bill to show that appellant even contemplated holding on to the assets until the lapse of the twelve months, and the benefit received by his wife equal with appellee from the distribution coupled with the absence of debts negatives the existence of any such idea.—See *Head v. Baldwin,* 83 Ala. 134.

Appellant with the co-executors held the title to the assets distributed, but the beneficial interest was in the legatees. The debts being paid he occupied the relation of trustee to them.—*Bailey v. Mundin,* 58 Ala. 107. While a settlement by a trustee with the beneficiary will be upheld it must be one made after a full disclosure by the trustee. It is not enough for the trustee to give the beneficiary the means of obtaining knowledge.—*Malone v. Kelly,* 54 Ala. 532. The bill fails to show that appellant ever had any communica-

[Norwood v. Tyson *et al.*]

tion with appellees in reference to his note. It shows that appellees knew that the note had been *given* to appellant by their mother, but it does not show that they knew the circumstances of the gift nor of their right to avoid it.—4 Eng. & Amer. Equity Dec. 341; *Humphreys v. Burleson,* 72 Ala. 5.

The endorsement made by Mrs. Tyson upon appellants note is *prima facie* evidence of its payment. This is true for the reason that it is in effect a mere receipt, and not a sale, being from the payee to the maker. — Teideman on Commercial Paper, §371. A receipt is never conclusive evidence where fraud or undue influence is alleged against it.—19 Amer. & Eng. Ency. of Law, (1st ed.), 1121; *Cowan v. Sapp,* 74 Ala. 44. If, on the other hand, appellant can prove a binding agreement upon the part of appellees that the partial settlement of October 29th should be taken as a final settlement, the probate court would have authority to discharge him as upon a full accounting. It is only where a receipt or release is improperly obtained that a decree upon it will be avoided.—*Humphreys v. Burleson,* 72 Ala. 1.

The probate court in the matter of the settlement of administration is a court of general jurisdiction, and it is contemplated that it shall have jurisdiction to determine all matters necessary to such settlements and not collateral to such administration. Thus claims of estoppel both for and against the executor and administrator upon his settlement are raised and determined thereon. In short, every matter not exclusively of equity cognizance, may be determined by it if it arises in the course of the settlement. Estoppels and undue influence are a species of fraud, of which courts of common law take cognizance as well as courts of equity.— *King v. White,* 119 Ala. 429; *Phoenix Ins. Co. v. Moog,* 78 Ala. 284.

McCLELLAN, C. J.—The issue, to speak generally, sought to be presented by the bill is the liability *vel non* of the complainant Norwood to the estate of Mrs. M. M. Tyson, deceased, for the sum of thirteen thou-

sand and two hundred dollars and interest, money borrowed by him from her and for which he executed his note to her some months prior to her death. This issue had been presented and was pending in the probate court of Montgomery county at the time this bill was filed in a proceeding there instituted by Silas Tyson, trustee, etc., in his capacity as legatee under Mrs. Tyson's will, against Norwood as an executor of said will. The bill seeks to enjoin that proceeding and to have the issue determined in the chancery court. The bill avers that this at one time existing indebtedness from Norwood to Mrs. Tyson was settled and discharged between him and her in her lifetime, that such settlement and discharge is evidenced by an entry made by Mrs. Tyson on a book in which were scheduled her choses in action set opposite the statement of this debt therein, also by a subsequent endorsement on said note, signed by Mrs. Tyson, substantially in these words: "For and in consideration of services rendered to me by my son-in-law, Joseph Norwood, I hereby give, transfer and assign to him this note, and debt embraced therein," and by the surrender by her of the note to him. It is further alleged in the bill by way of anticipation that said Silas Tyson claims that this transaction between the complainant and Mrs. Tyson was induced by undue influence exerted by him upon her and that he will attack the alleged discharge and settlement on that ground; and the complainant goes on to aver facts and circumstances connected with the transaction which are intended and supposed to rebut this contention of Tyson and to demonstrate that the settlement and discharge of said debt was not the result of such undue influence. It is clear, we think, that no equity, no right to come into the chancery court to enjoin the proceeding in the probate court and have the issue in question determined in the chancery court, is predicable upon the averments to which we have adverted. To the contrary, on the facts so far disclosed, the complainant has an entirely adequate remedy at law by way of defense against accountability in the probate court proceeding. The settlement and discharge alleged is, to say the least, *prima facie* valid and effective as well in the probate court as in any other

court. If its efficacy should be attacked, or attempted to be attacked in the probate court by Tyson on the ground of the undue influence referred to, the complainant would have the same standing and opportunity there as in the chancery court to meet and defend against and rebut that attack, if the probate court has jurisdiction to entertain and determine the issue of undue influence *vel non;* and if that court has not that jurisdiction, the hurt would be to Tyson and not to Norwood. Norwood would go free of accountability on the bald fact of the debt having been in terms discharged and acquitted by Mrs. Tyson. The invocation of chancery jurisdiction would be necessary to the effectuation of Tyson's position, but not to Norwood's. And, whether the probate court goes into the issue of undue influence or not, and whether with or without a determination of that issue, if its judgment is that Norwood was discharged of the liability in question by the testatrix, that judgment would be final and establish his non-liability for all purposes and in all courts. On the other hand, of course, the judgment of such court holding him liable would be likewise final and conclusive. So that on this part of the case presented by the bill there would be no possibility of a multiplicity of suits and no equity can be evolved out of that theory.

But in another aspect, the bill proceeds on the assumption that the question of the validity and efficacy of said discharge and acquittance will be determined against the complainant upon the inquiry of undue influence, and upon that theory the effort is made by its averments to set up another defense against liability of Norwood to account on the settlement of his executorship for the amount of said note as a debt due by him to the estate, or, rather, these averments are intended to show that the whole estate has been settled and that, of consequence, Norwood cannot be put to any accounting whatever. As we read the bill in this connection its averments are to the effect that the four legatees under the will of Mrs. Tyson, each by the terms thereof entitled to one-fourth of her estate, which consisted altogether of money and choses in action, agreed among themselves upon a division of the assets of the estate to

and among themselves in equal parts, agreed further that this division should be a full and final distribution and settlement of the estate, that they each should execute a receipt for the assets received by them severally, and that upon the lapse of twelve months from the grant of letters testamentary these receipts should be filed in the probate court and upon them without more final settlement of the executorships should be had and adjudged; and the executors should be discharged. Such we find to be the agreement alleged. It is further averred that the assets of the estate were accordingly divided among and distributed to the several legatees, that a receipt was executed by them severally, which, however, does not on its face show that the distribution was of the whole of the estate, but purports only to be based "on a division of $93,080.01 of the assets of the estate of Mrs. M. M. Tyson, deceased," and the schedules attached to the receipt in which are set down the items of assets distributed do not embrace the Norwood note nor another note for about forty-five hundred dollars which one of the legatees had executed to Mrs. Tyson and which she had discharged and surrendered at the time of the discharge and surrender of Norwood's note—that this receipt was left with one of the executors, who was also one of the legatees, to be filed in the probate court for the purpose above stated after the lapse of twelve months from the grant of letters, that said time has elapsed but said receipt has not been so filed. Upon these averments, the prayer is for a specific performance of the alleged agreement of settlement and distribution and for a discharge of the executors. We think the bill upon these allegations and for this purpose has equity. The specific performance of contracts is a jurisdiction peculiar to chancery courts and exclusive in them. The probate court cannot grant this relief. It might possibly in this case upon proof of the agreement alleged decline to coerce Norwood to further settlement, and dismiss the proceeding instituted by Tyson to that end. But this would not be the full measure of relief to which he is entitled on the facts he has averred in this connection. To dismiss that proceeding would not be to *discharge* Norwood from all accountability and liability as exe-

[Norwood v. Tyson et al.]

cutor, and such discharge is the relief to which he is entitled. Contracts to confess judgments, to have decrees entered, and the like, are as capable of specific enforcement as any other contracts. Nor is it any objection to the relief that the chancery court cannot enforce this contract according to its precise terms, order respondents to file the receipt in the probate court and decree that that court enter up a judgment discharging the executor. The essential feature of this agreement, its pith and gist, is the entry and enrollment of a judgment or decree, by some court having jurisdiction, settling the administration and discharging the executors; and the chancery court having assumed jurisdiction to specifically enforce the contract, may effectuate that jurisdiction by any decree which will conserve the end stipulated for. Moreover, the chancery court's jurisdiction to settle estates and determine the liability of executors where questions arise beyond the competency of the probate court, as here, involves the same power to decree a discharge of the executors as the probate court would have had, if all the parties had come into that court and proceeded in accordance with the agreement. It is quite true, as we have seen, that the receipt which was executed by the legatees on the division and distribution that was made, does not affirmatively support the averments of the bill that the distribution was intended to be and was of the whole estate. Indeed, it may be admitted that the language of the receipt is evidential against the averment of full settlement and distribution. But, of course, the receipt is evidential only. It is not conclusive, it does not purport to be the contract made, if any contract was made. The contract alleged may be proved, the evidential tendency of the receipt to the contrary notwithstanding. It is averred in one way or another in the bill— whether sufficiently against a demurrer is not now under consideration—that the legatees when making the settlement and distribution and agreeing to the discharge of the executors, had full knowledge of all the facts and circumstances bearing upon the matter in hand. They were each of contracting age. On the allegations of the bill, it cannot be said that the agree-

ment was unfair or oppressive. True it involved a pretermission of the claim now asserted by Tyson as to Norwood's liability to account for the amount of the note. But this was a doubtful claim. Its determination involved important questions of law and fact; as for examples, whether the discharge and surrender of the note was a gift or compensatory; whether, if a gift, it was *inter vivos* or *mortis causa;* if the former, were the relations between Mrs. Tyson and Norwood such as would raise a presumption of undue influence, and if so, was this presumption overturned by the intervention of independent and disinterested advice; if the gift was *mortis causa,* what rule as to undue influence should obtain, that applicable to gifts *inter vivos* or that applicable to wills, etc., etc. From the viewpoint of the legatees at the time of the distribution, the assertion of the claim would lead to litigation, which might be prolonged, and delay any distribution even after the lapse of twelve months from the grant of letters, and which might finally result in the defeat of the claim and costs to the estate. Then, too, the considerations set forth in the bill as moving Mrs. Tyson to discharge and surrender the claim, and the fact that her expressed desire was to that end, may have exerted a legitimate influence toward the agreement alleged. If it be said that Mrs. Tyson's discharge and acquittance was induced by undue influence—and that is the theory upon which we are now proceeding—that undue influence is a species of coercion and fraud, and that the chancery court should not decree the specific performance of a contract which would involve the effectuation of such product of coercion or fraud, it is to be replied that the undue influence in question was not actual but constructive merely, that its existence rested, not upon any wrongful act of Norwood, but is a presumption of law from the mere existence of relations between him and Mrs. Tyson which were not only natural and proper but commendable. All these things go to the general fairness of the alleged agreement. There are other facts averred which, while also going to the general question of fairness, constitute in a stricter sense the consideration for the contract to discharge

[Norwood v. Tyson et al.]

from all accountability. The foregoing of commissions involved in the alleged settlement was a valuable consideration of positive benefit to that one of the legatees who was not also an executor, and it was of positive detriment to that one of the executors who was not a legatee. The force of these propositions is not impaired by the fact that the executor who was not a legatee and the legatee who was not an executor were man and wife—Mr. and Mrs. Norwood. Husband and wife have long since ceased to be one under our laws in respect to their rights of property. And the fact that the settlement as and when made involved the distribution and delivery of the assets of the estate to the legatees immediately after the grant of letters when in the absence of the agreement no distribution need have been made until twelve months had elapsed was a valuable consideration for the agreement of positive benefit to each of the legatees. Other considerations might be adverted to as supporting the agreement alleged, but enough has been said to show the grounds of our conclusion that the agreement as alleged is valid and is of such fairness as appeals for enforcement to equity jurisdiction.

Upon some of the propositions stated above we cite authorities: The probate court has not jurisdiction in the proceeding now pending before it to effectuate the alleged agreement.—*Matter of Wagner,* 119 N. Y. 28; *Matter of Randall,* 152 N. Y. 508.

Contracts involving rendition of judgments and decrees and the like may be specifically enforced.—Waterman Spec. Per. § 107; *Burton v. London* (Vt.), 29 Atl. Rep. 374; *Deen v. Milne,* 113 N. Y. 303; *Richardson v. Eyton,* 2 De Gex, M. & G. 79; *Pryor v. Gribble,* 10 Ch. App. L. R. 534.

Where the object of the contract can be accomplished in some other way, it is no defense to a bill for specific performance that the contract cannot be enforced in the precise manner stipulated therein.—Pom. Sp. Per. § 191 and note; Waterman Sp. Per, §§ 41, 129.

As we have seen, in so far as the bill relies upon the discharge and surrender of the note by Mrs. Tyson to Norwood, it is without equity for that defense is cog-

nizable by the court of probate; but the fact that this claim is made by the bill does not stand in the way of the chancery court's jurisdiction to determine the other claim presented by it for specific performance, which is purely of equitable cognizance.—*Baptist Church v. Bullock*, 133 Ala. 548, and cases there cited.

Without intending to intimate any opinion or inclination of mind on the question of the jurisdiction of the probate court to determine the issue of undue influence *vel non* mooted in respect of Mrs. Tyson's discharge of the note of Norwood, we cite the following cases which may have a bearing upon it: *Dixon v. Buell*, 21 Ill. 203; *In re Steele*, 65 Ill. 326; *Millard v. Harris*, 119 Ill. 185; *Wadsworth v. Connell*, 104 Ill. 369, 378; Potter's Appeal, 56 Conn. 1.

We do not find that the averments of the bill make a case of estoppel *in pais* upon Silas Tyson to now contest the validity of the alleged discharge and acquittance by Mrs. Tyson of Norwood's note. It does not appear that the complainant has acted or omitted to act to his prejudice on account of the conduct of said Tyson, leaving out of view, of course, the alleged agreement of said Tyson and others considered above.

We are of opinion that the city court erred in dissolving the injunction for want of equity in the bill, and in granting the motion to dismiss the bill for want of equity. Its decree to these ends will be reversed, and a decree will be here rendered overruling the motions to dissolve the injunction and to dismiss the bill, and restoring the injunction.

The decree below also sustained a demurrer to the bill. That, in view of the dismissal of the bill for want of equity, seems to have been supererogatory. We will not discuss the demurrer here. From what has been said above in review of the motion to dismiss for want of equity, it would appear to follow that one or more of the assignments of demurrer would be good against a part of the bill, but as the demurrer is in terms laid against the bill as a whole it should have been overruled. The decree in this behalf will also be reversed, and a decree will be here entered overruling the demurrer.

Reversed and rendered.