In the Matter of the Estate of STEPHEN LOSEE, Deceased.

ESTELLA LOSEE HURD, as Administratrix, etc., of CORNELIUS LOSEE, Deceased, Appellant; LENA NICHOLLS, as Administratrix, etc., of STEPHEN LOSEE, Deceased, Respondent.

Second Department, April 19, 1907.

Executors and administrators — presumption of death after seven years — letters of administration, when refused — illegitimate not proper party to accounting — surrogate cannot determine validity of assignment.

When a person disappears under circumstances showing an intention to commit suicide and is not heard of for seven years, he is presumed to be dead, and in the absence of a specific decree setting the death at an intermediate date, the death dates from the time of a decree adjudging the person dead.

Where the decedent left no debts and the next of kin have distributed his property by consent, there is no necessity for administration and letters are properly refused. So, too, when a next of kin has assigned his interest and then dies his

administratrix is not entitled to letters upon the estate of which he assigned his share, he having parted with all interest therein.

An illegitimate is not a proper party to an accounting.

When the validity of an assignment by a next of kin is contested, the issue is beyond the jurisdiction of the surrogate.

HIRSCHBERG, P. J., and JENKS, J., dissented.

REARGUMENT of an appeal by the petitioner, Estella Losee Hurd, as administratrix, etc., from a decree of the Surrogate's Court of the county of Kings, entered in said Surrogate's Court on the 28th day of April, 1905.

*H. O. Hance* and *William J. Miller*, for the appellant.

*William G. Wilson*, for the respondent.

Decree of the Surrogate's Court of Kings county affirmed, with costs, upon the opinion of the surrogate.

WOODWARD, HOOKER and GAYNOR, JJ., concurred; HIRSCHBERG, P. J., and JENKS, J., dissented.

The following is the opinion of the surrogate:

CHURCH, Surrogate:

This matter has been before the court on several occasions and the rights of the different parties have never been definitely determined. I shall, therefore, determine every question arising in order that this somewhat involved proceeding may be finally disposed of.

Cornelius Losee lived on Long Island, and about 1850 married a woman, Harriet Smith, by whom he had a child, Stephen Losee; later he moved to Connecticut, where he lived with another woman by whom he had children, one of whom was named Thomas Losee. I am satisfied that this marriage was illegal, and that Thomas Losee was an illegitimate son. Cornelius Losee, for the last fifteen years of his life, was an inmate of the poorhouse in Darien, Conn., at which place he died on November 15, 1896, leaving no estate or debts. Stephen Losee never married, and in February, 1889, he disappeared under circumstances showing an intention to commit suicide.

Thomas Losee, in 1896, more than seven years after Stephen's disappearance, made an effort to be appointed administrator of Stephen's estate; in this matter the question of his illegitimacy was raised but not determined, as it appears that Thomas was not com-

petent to receive letters. In April, 1897, the next of kin, on petition, secured letters of administration on his estate and later made an accounting.

It is to be noted that the next of kin of Stephen Losee at the date of administration are the same persons as the next of kin of Cornelius Losee. In their final accounting they made no mention of Thomas Losee (the illegitimate), nor did they procure an administration of Cornelius Losee's estate, but made direct division between themselves.

In August, 1896, Thomas Losee had got what is claimed to be an assignment from Cornelius of all his share in his son Thomas' estate.

Thomas Losee died March 21, 1897, leaving a will making his wife (the petitioner herein) his sole legatee and sole executrix therein. In March, 1899, she filed a petition herein to open the final decree of distribution; a decision was made therein in April, 1900, which simply opened the decree and let the parties come in and be heard in order that their rights might be determined. Subsequently on April 15, 1901, letters of administration were issued upon the estate of Cornelius Losee; no attempt was made to go on with the hearing, but in 1902 the petitioner made a motion to have the entire estate turned over to her, which motion was denied.

The present motion is now made by the petitioner in a double capacity — as administratrix of Cornelius Losee and as executrix of Thomas Losee. The two characters under which the petitioner herein seeks to obtain this fund occupy a directly contrary attitude toward such fund. It is impossible for any honorable person to fill these two positions and discharge her duty by each, and it is perfectly manifest that the petitioner has taken these two positions so as to be enabled to reach the fund if it is possible to do so and trust to luck hereafter to justify her disposition of the same. I, therefore, shall take up separately the rights to this fund, *first* by the administratrix of Cornelius Losee, and *secondly* the rights of the executrix of Thomas Losee.

The petitioner seeks to contend that under the decision of Surrogate ABBOTT rendered in April, 1900, every question has been settled, and that, therefore, the fund should be turned over immediately to the administratrix of Cornelius Losee. I do not so interpret this decision; on the contrary, I find on the files of this court

orders submitted by the counsel for the present petitioner, who was also the counsel in that proceeding, which asked the surrogate to then directly dispose of the fund, but the decree which the surrogate entered simply opened the proceeding in order to give the parties an opportunity to be heard and have their rights definitely adjusted; in other words, this decree was very much like an order opening a default (where the court is convinced that there is enough shown) to give the party an opportunity to be heard but carefully refrains from passing upon the merits of the controversy. It is true that some findings were made by the surrogate at the time, but what was the effect of these findings? Under the practice findings were unnecessary and although they appeared to have been signed they do not appear to have been in any way necessary to the decree; in fact, the decree which was dated the same day makes no reference to the findings, but says that it was simply made upon the papers in the case.

In considering the rights of Cornelius Losee, we first have to determine the date of the death of Stephen Losee. Where persons disappear without any supposition other than the word that they intend to commit suicide, the presumption is that after the expiration of seven years they are dead. (*Eagle* v. *Emmet*, 4 Bradf. 117.)

And while the court under special circumstances could specifically decree the death to have happened at some intermediate period (*Allen* v. *Ketcham*, 24 N. Y. St. Repr. 251) yet in the absence of any such determination the time of death will ordinarily date from the decree adjudging the party dead. If this was so, then as the decree was not made until after the death of Cornelius, it necessarily follows that Cornelius' representatives or assignees would neither of them have any standing here, and the proceeding might properly be terminated without further inquiry. But assuming that Stephen predeceased Cornelius at the time of the accounting, the next of kin of Cornelius were the same as the next of kin of Stephen, assuming that Cornelius had died first; and as it appeared affirmatively that there were no debts, the parties could distribute directly without the necessity of obtaining an administrator for Cornelius Losee, whose sole duty would be to distribute again to the same persons.

"Administration is granted on an estate because there is some occasion for such a grant; and where there is no occasion, *no substantial object to be gained by the issue of letters*, the grant should be withheld." (Schouler Executors [3d ed.], § 120.)

A case very similar is that of *People* v. *Abbott* (105 Ill. 595), where it is said:

"Where there are no debts and the property is already distributed and there are no suits to be brought there can be no necessity for an administration." (See, also, *Herrington* v. *Lowman*, 22 App. Div. 267; *Carmichael* v. *Ray*, 5 Ired. Eq. [N. C.] 367; *Fretwell* v. *McLemore*, 52 Ala. 124; *Teal* v. *Chancellor*, 117 id. 616; *Babbitt* v. *Bowen*, 32 Vt. 437.)

That being so, this administratrix has no standing here, because she cannot claim that she represents either next of kin of Cornelius (as they have had their share), and as there are no creditors she cannot pretend that she has any duty in that respect, nor has she had any duty in regard to the claim which Cornelius had given to Thomas, because if he signed that away, then he had no interest whatever.

It has been held that if it is claimed that a party has assigned his rights, which assignment is disputed, such assignment is not a bar, but if, as in this case, the party not only admits but stands on the assignment then the court may act thereon. (*Bonfanti* v. *Deguerre*, 3 Bradf. 429.) And upon her statement here the letters issued on Cornelius' estate should be revoked.

*Secondly*, what rights has the executrix of the estate of Thomas Losee?

If Thomas was the legitimate son of Cornelius and the half brother of Stephen, he would be next of kin, and the accounting of 1898, which ignored him, would be ineffective; as I have stated, the proofs satisfy me that he was illegitimate, and, hence, was not properly a party to that proceeding.

What rights did he have as an assignee of the interest of Cornelius Losee in the estate of Thomas Losee? The validity of this assignment is questioned; that being so, the question of its validity is beyond the jurisdiction of the surrogate to try. (*Matter of Randall*, 152 N. Y. 508.)

Therefore, even if this were an accounting by the administrator

of Cornelius Losee, the surrogate would not pass on the rights of Thomas Losee thereunder but would direct the distribution to these respondents.

The disinclination to recognize assignments is further evidenced by chapter 692 of the Laws of 1904, which provides that such assignments shall have no effect unless recorded. The executrix of Thomas Losee has no rights in this proceeding, therefore, under any aspect in which we might view the same. This decision is somewhat at variance with the views expressed by my predecessor in his opinion on the motion to open the decree. It is with extreme reluctance that I differ with one who for so many years so capably filled the office of surrogate in this county, but he has quoted no authority in support of his view, whereas a careful examination of the authorities has convinced me that his conclusions were not in accordance with the law. It seems to me, therefore, that deference to his learning does not require me to ignore the decisions of the highest courts of this and other States. I appreciate also that he indulged in certain strictures as to the conduct of the administrator herein, with which I am also unable to agree, as it has been shown that there was no reason or necessity to appoint an administrator for the estate of Cornelius Losee, and when the administrator cited the various parties in question she complied with all the provisions of the statutes governing her conduct. I know of no provision of law which requires an administrator to cite illegitimate relatives of the deceased and require them to come forward and disprove their illegitimacy, nor is there any provision which requires an administrator to cite persons claiming to hold disputed assignments of the shares of any of the next of kin, because, as has been shown, the court has no power to hear or determine any question in regard to such disputed assignments.

If there is anything in the case which merits judicial criticism it is the conduct of the illegitimate son, Thomas Losee, who permitted his father to remain in the county poorhouse without visiting him for fifteen years except when he wanted to procure a paper which, if valid, would enable said Thomas Losee to get the entire estate of Stephen Losee.

Proceedings dismissed, with seventy dollars costs.