In the Matter of the Estate of JOSIAH H. MONROE, Deceased ; LEVI CAMPBELL, Petitioning Creditor, Respondent, CHARLES C. ALLEN, Administrator, etc., Appellant.

An administrator, as such, has no authority or control over the real estate of his intestate, and assumes no obligation in reference to it.

He is not, therefore, precluded from foreclosing a mortgage on said real estate held by him, purchasing on a foreclosure sale and holding the land in his own right.

A Surrogate's Court has no jurisdiction to declare a trust and enforce it, by decree.

In proceedings in a Surrogate's Court to remove an administrator, it is the duty of the surrogate to make specific findings of the facts upon which his decree is based ; and the duty may not be imposed upon an appellate court of searching the record for facts that should be incorporated in the findings.

In such proceedings it was charged, and the surrogate found in substance, that the administrator at the time of the death of his intestate, owned certain mortgages covering the real estate of the latter ; these he foreclosed after he entered upon the discharge of his duties, and at the sale prevented bidding by promising the creditors that he would bid in the property for the amount of his respective liens, make a private sale thereof and account to the estate for any profits realized ; that he did bid in the property, made subsequent private sales, realizing profits for which he refused to account. *Held*, that the Surrogate's Court had no jurisdiction to try those questions ; that if the executor was liable to account for the profits a court of equity was alone competent to try the issues presented, and render a binding decree.

As to whether it was competent for the surrogate to receive the testimony on the theory that the acts of the administrator were hostile to the estate and so he was unfit to continue in office, *quære*.

(Argued April 10, 1894 ; decided June 5, 1894.)

Appeal from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 22, 1892, which affirmed a decree of the Surrogate's Court of Chautauqua county revoking letters of administration granted to the appellant as administrator of Josiah H. Monroe, deceased.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*William H. Henderson* for appellant. Many of the facts and circumstances set forth in the petition are so vague and general that they gave no information to the administrator as to what he was to meet. The facts and circumstances, which are set forth with some definiteness, the surrogate has made no findings upon whatever. The petitioner is required to set forth in his petition the facts and circumstances. (Code Civ. Pro. §§ 2545, 2686; *Constant* v. *University of Rochester*, 123 N. Y. 640; *Morris* v. *Talcott*, 96 id. 107.) The surrogate erroneously found that the administrator, with the aid and assistance of the said appraisers and of the said Webb, did not proceed with due diligence in making said inventory and appraisal. (*Forsyth* v. *Burr*, 27 Barb. 542; *In re McCaffrey*, 50 Hun, 373.) This court may for itself determine whether the appellant has been guilty of such mismanagement, misconduct and dishonesty as to render him unfit to remain in office until a judicial settlement of his accounts could be had, the estate being in readiness for final settlement. (Code Civ. Pro. §§ 2576, 2586.) There is no evidence to sustain the surrogate's decree. (*In re Moulton*, 32 N. Y. S. R. 631; *Morris* v. *Talcott*, 96 N. Y. 100; *Jaeger* v. *Kelley*, 52 id. 274; *Starin* v. *Kelley*, 88 id. 418; *Park* v. *Connors*, 93 id. 118.) The Surrogate's Court had no jurisdiction to declare the appellant to be a trustee of lands purchased by him upon the foreclosure sales or of the proceeds of the re-sale of said lands by him, and then proceed to inquire into his conduct as such proposed trustee, and if his conduct is not found to be satisfactory to the surrogate, for that reason to

revoke the letters of administration. (*Fulton* v. *Whitney*, 66 N. Y. 548, 557; Code Civ: Pro. §§ 2472, 2481, 2685; *Calyer* v. *Calyer*, 4 Redf. 305; *Bennett* v. *Crane*, 41 Hun, 183, 186.)

*A. C. Wade* for respondent. The General Term having affirmed the decision of the surrogate on the facts, there is no jurisdiction in the Court of Appeals to review these decisions on conflicting evidence. (*Hewlett* v. *Elmer*, 103 N. Y. 156; *In re Ross*, 87 id. 514; *Johnson* v. *Williams*, 95 id. 668; *Marx* v. *McGlynn*, 88 id. 357; *Davis* v. *Clark*, 87 id. 623; *In re Ackerman*, 116 id. 654; *In re Cahen*, 117 id. 626; *In re Valentine*, 100 id. 607; *In re McGillivray*, 138 id. 308.) No exceptions were taken to any of the rulings of the surrogate in admitting or excluding evidence offered, or to any of his decisions, upon the trial; therefore, it leaves for the decision of this court but the single question of determining whether there is any evidence upon which the findings of the surrogate can be supported. (*In re Yates*, 99 N. Y. 94; *In re Ackerman*, 116 id. 654; *Marx* v. *McGlynn*, 88 id. 357; *In re Darrow*, 95 id. 668.) The first conclusion of law found by the surrogate, that by reason of his having misman-aged and injured said estate and the property committed to his charge, and by reason of his mismanagement, misconduct and dishonesty in the execution of his office the appellant is unfit for the proper execution of the trust, was proper. (Code Civ. Pro. §§ 2685–2687; *In re West*, 40 Hun, 291.) A decree revoking the letters issued should be made where the acts of misconduct, mismanagement and dishonesty are found as in this case. (Code Civ. Pro. § 2687; *In re Stanton*, 18 N. Y. S. R. 807; *In re West*, 40 Hun, 291.) The conten-tion of appellant that he, having rendered his final account to the surrogate before the close of this proceeding and presented his petition for final settlement, that the estate was fully administered upon, and that the surrogate had no power and should not exercise it if he had, to revoke the letters of administration, is without force. (Code Civ. Pro. §§ 2686, 2687, 2750, 2799; *Keech* v. *Sanford*, 3 Eq. Cas. Abr. 741;

*Randall* v. *Errington*, 10 Ves. 423 ; *Ex parte Lacey*, 6 id.
625 ; *Fox* v. *Mackreth*, Id. 627 ; *Rogers* v. *Rogers*, Hopk. Ch.
515 ; *De Voe* v. *Fanning*, 2 Johns. Ch. 252 ; *Dobson* v. *Racey*,
3 Sandf. Ch. 61 ; *De Curtiss* v. *La Ray*, *Da Clarmount*, 3
Paige Ch. 178 ; *Munroe* v. *Alliure*, 2 Caines Cas. 183 ; *Col-
burn* v. *Morton*, 3 Keyes, 296 ; *Duffy* v. *Duncan*, 35 N. Y.
193 ; *Case* v. *Carrot*, Id. 385 ; *Penman* v. *Slocum*, 41 id.
53.)

BARTLETT, J.   This is a proceeding instituted by a creditor
in the Surrogate's Court of Chautauqua county to remove
Charles C. Allen as administrator of the estate of Josiah H.
Monroe, deceased.   On the 23d of May, 1889, a decree was
entered to the effect that the administrator had mismanaged
and injured the estate and the property committed to his
charge, and by reason of his mismanagement, misconduct and
dishonesty in the execution of his office he was unfit to fill
the same, his letters of administration were revoked, and he
was charged personally with the costs and disbursements of
this proceeding.   The General Term affirmed the decree, and
the administrator appealed to this court, and having since
died, his executor, Thomas J. Fenton, has been duly substi-
tuted.   The record discloses that the administrator received
his letters September 24th, 1883 ; filed his inventory the fol-
lowing December ; presented his first account in January,
1887, and a supplemental account in March, 1888.   Objec-
tions were filed to the first account and the accounting stood
adjourned to June 24th, 1887.   Pending the adjournment
this proceeding was instituted to remove the administrator,
and adjourned to the same date as the accounting.   Both pro-
ceedings came up before the surrogate on the 24th of June,
1887, and the administrator asked to go on with his account-
ing.   The request was refused, the accounting postponed, and
this litigation allowed to proceed.   It remains for us to deter-
mine whether the decree in this long and expensive proceed-
ing, which has postponed the settlement of the estate for
years, and subjected the late administrator to public disgrace

and removal from office, can be sustained. This proceeding is instituted under sections 2685 and 2686 of the Code of Civil Procedure. The petition states three grounds for the removal of the administrator which were relied upon at the trial, viz. :

1. That the administrator has wasted and improperly applied money and assets belonging to the estate which have come into his hands as administrator.

2. That he has improvidently managed and injured the estate and the property committed to his charge.

3. That he has been guilty of misconduct in the execution of his office in numerous instances and upon divers occasions.

The very general charges of this petition were sought to be sustained by affidavit proof as required by the Code, in order that citations might issue. (Code C. P. § 2686.) As this court has no power to weigh the evidence on disputed questions of fact, and can only deal with legal error, it becomes necessary to examine the findings of fact and conclusions of law upon which the decree rests. The case on appeal is voluminous and the evidence has been introduced to a considerable extent without regard to the issues framed by the petition and answer. There are findings of fact upon matters not included in the allegations of the petition; there are numerous alleged findings of fact the mere statements of conclusions, entirely destitute of specific facts and utterly without value. The Code does not contemplate such practice, and to permit it would be to impose upon an appellate tribunal the laborious duty of searching the record for facts that should be incorporated in the findings. Of the thirty alleged findings of fact in this record nearly one-half of them are defective. The findings of fact, which are in form and substance sufficient, deal substantially with three distinct topics : First, a few items of personal property alleged to have been omitted from the inventory, the value of which would not aggregate two hundred and fifty dollars; second, an alleged corrupt offer said to have been made by the administrator to one Amos Bills, to allow as a claim against the estate a note pre-

sented by said Bills-on which he insisted there was due a little more than three hundred dollars and interest, if Bills would divide with him the amount he received from the estate; third, alleged profits realized by Charles C. Allen individually, from sales of real estate formerly owned by the intestate on which said Allen held mortgages, foreclosed after intestate's death, the mortgagee buying the property at the sales.

The petition herein, among other things, charges substantially that at the time of intestate's death the administrator owned certain mortgages covering intestate's real estate, and that after he had entered upon the discharge of his duties as administrator he proceeded to foreclose them; that at the sales the mortgagee prevented bidding by promising the creditors of the estate to bid in the properties for the amount of his respective liens, make a private sale of the same, and account to the estate for the profits realized in these transactions and thus save the expense of surplus money proceedings; that creditors and others did refrain from bidding at these sales; that the mortgagee did take title, make subsequent private sales and realized profits for which he refused to account to the estate or its creditors. The administrator denies these charges in his answer, and in substance avers that the foreclosures of the mortgages were duly and regularly conducted. It seems to have been the theory of the petitioning creditors that the administrator, acting as an individual in the pursuit of his legal remedies as mortgagee, became, by reason of the facts stated, a trustee *in invitum*, and liable to the estate and its creditors for the profits alleged to have been realized in the subsequent sales of real estate bid in by him at the foreclosure sales. It is difficult to understand upon what theory the Surrogate's Court proceeded to try questions lying wholly outside of its jurisdiction, and make elaborate findings relating to the same; it does not possess the general powers of a court of equity; if Charles C. Allen, as an individual, was liable to account for the moneys alleged to have been realized by him as before stated (we express no opinion as to his liability) a court of equity is alone competent to try the

issues presented and render a binding decree as to all parties after a full investigation of the facts. An administrator, as such, has no authority or control over the real estate of his intestate, and assumes no obligations in reference to it, and owes no duty to the heirs; he is not, therefore, precluded from purchasing such real estate at a foreclosure sale, and from holding the same in his own right. (*Hollingsworth* v. *Spaulding*, 54 N. Y. 636.) If the alleged profits in the hands of Charles C. Allen are to be regarded in equity as surplus moneys, they would be real estate and recoverable as such. (*Dunning* v. *Ocean National Bank*, 61 N. Y. 497.) The mere fact that the interest of the administrator individually was opposed to that of the estate in the transaction now under consideration presented no embarrassment and did not require his removal from office. A proper plaintiff could have invoked the aid of a court of equity, making the interested parties defendants, and the rights of all would have been fully protected. A Surrogate's Court has no jurisdiction to declare a trust and enforce it by decree. (*Fulton* v. *Whitney*, 66 N. Y. 557.)

It may, however, be urged that admitting the Surrogate's Court had no jurisdiction to try the issues growing out of the administrator's mortgagee interests, and compel him, by final decree, to account for alleged profits in his hands to which the estate is entitled, yet it was competent for the court to take testimony bearing on this subject upon the theory that the acts of the administrator showed him to be hostile to the estate and unfit to continue in office.

We do not decide that such evidence would not be competent under proper limitations.

If legal and substantial grounds for removal had been alleged and proved, it might well be that such evidence would tend to characterize the attitude of the administrator towards the estate.

In the case at bar we have no such situation presented; the record discloses findings covering all of these mortgagee transactions, and we cannot assume that the surrogate based

his decree of reversal upon the trivial matters already referred to, but we are satisfied he must have given undue importance to the real estate transactions which could not be the basis of a decree removing the administrator from office.

This is a proceeding, not to punish the administrator, but to protect the estate, and it was invoked in this case under circumstances wholly unnecessary and unjustifiable.

The court found that the administrator and his sureties were financially responsible and able to make good the estate if it suffered loss. The unimportant and vexatious questions litigated in this proceeding could have been disposed of on the accounting and the administrator charged in a final decree for all losses he had caused the estate, if any such were proved.

Creditors now find themselves, after years of wasting and fruitless litigation, standing at the threshold of the accounting proceedings which afforded them an abundant remedy at the outset, and compelled to resume the settlement of this estate at the point where it was interrupted in June, 1887.

The decree of the Surrogate's Court and the judgment of the General Term should be reversed, with costs to the appellant in all courts.

All concur.

Judgment accordingly.