WILLIAM H. HASTRICH, Individually and as Executor, etc., of MARGARETHA SCHMALZ, Deceased, Appellant, v. PAUL M. PILCHER and Others, Respondents.

In the Matter of the Judicial Settlement of the Account of WILLIAM H. HASTRICH, as Executor, etc., of MARGARETHA SCHMALZ, Deceased.

WILLIAM H. HASTRICH, as Executor, Appellant; PAUL M. PILCHER and ANTONIA WALSH, Respondents.

*(Supreme Court, App. Div., Second Dept., February 28, 1916.)*

EXECUTORS AND ADMINISTRATORS—JURISDICTION OF SURROGATE ON ACCOUNT-
ING PRIOR TO AMENDMENT OF 1914—WHEN ACCOUNTING INVOLVES QUES-
TIONS OF EQUITABLE RIGHTS AND TITLE TO REAL ESTATE—RIGHT OF
EXECUTOR TO INVOKE EQUITABLE POWERS OF SUPREME COURT AND TO STAY
PROCEEDINGS BY SURROGATE ON ACCOUNTING.

An owner of certain premises in fee simple which had been sold by the State Comptroller for taxes, died intestate, seized and in possession of the premises without having redeemed them from the sale, leaving three infant sons, his only heirs at law, and a widow.   The widow was appointed and qualified as administratrix and as general guardian of the infant sons.   She died leaving a will by which, after certain legacies, she gave the rest, residue and remainder of her estate to the three sons, share and share alike, and invested her executor with power to sell, and directed him until the sale to pay the surplus, if any, from her property to her children.   The purchaser at the tax sale, who had been the husband's lawyer for twenty years, was continued as such by the widow, both as administrator and general guardian, and he quitclaimed to her. During her life the premises were mortgaged.   One of the infants after

becoming of age conveyed all of his right in the premises to his mother. The executor, after a sale of the premises, filed his account with the surrogate, claiming that he was accountable for one-third of the purchase price, less one-third of the sum required to discharge the mortgage. An objection was made that the testatrix died possessed of the entire premises and, therefore, her executor was chargeable with the entire proceeds of the sale, less the amount of the mortgage.

*Held*, that since the accounting was begun before the amendment of 1914, vesting the surrogate with broader powers, he had no jurisdiction to declare a trust and to enforce it by decree, nor to consider the question of the exclusive title of the testatrix to the premises by virtue of the tax deed.

Since the account by the executor of the administration of his office involved questions of his equitable rights, which could not be determined by the surrogate, he had the right to invoke the equitable powers of the Supreme Court, which court may stay the proceeding of the Surrogate's Court until a final determination of the questions presented.

APPEAL in the action by the plaintiff, William H. Hastrich, individually and as executor, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 30th day of January, 1915, dismissing the action and vacating an injunction pursuant to the decision of the court after a trial at the Kings County Special Term.

Appeal in the proceeding by William H. Hastrich, as executor, from part of a decree of the Surrogate's Court of the county of Kings, entered in the office of said Surrogate's Court on the 29th day of March, 1915.

Charles A. Webber, for the appellant.

F. De Lysle Smith, for the respondents.

JENKS, P. J. — Ungerland owned certain premises in fee simple, which were sold, in December, 1895, by the State Comptroller for taxes pursuant to chapter 711 of the Laws of 1893.*

* Amd. by Laws of 1895, ch. 895.—[REP.

Ungerland died in January, 1896, intestate, seized and in possession of the premises, without having redeemed them from the sale. He left three infant sons, his only heirs at law, and a widow. In February, 1896, the widow was appointed and qualified as administrator of her husband and as general guardian of the said infants. During her life, and in 1903, the said premises were mortgaged for $7,500. The widow died in January, 1912, leaving a will whereby Hastrich was appointed as executor. After certain legacies, the testator gave all of the rest, residue and remainder of her estate to her three sons, share and share alike, invested her executor with powers of sale and directed him, until the sale thereof, to pay the surplus, if any, income from her real and personal property to her children. In March, 1913, the executor went voluntarily into the Surrogate's Court with his account. Therein he stated that he had received proceeds of sale — " Property sold at private sale by me for $12,000." The realty was subject to a mortgage for $7,500, which was paid off, and the executor charged himself with one-third of the principal of the mortgage and one-third of the interest thereon until the day of sale. These items in the account are explained by the fact that one of the infants, after attaining his majority, had conveyed all of his right, title and interest in the premises to his mother. The theory of the executor was that, therefore, he was accountable for one-third of the purchase price, which, less the one-third of the sum required to discharge the mortgage, amounted to $1,500. An objection aimed at this transaction brought this controversy. The contention of the objector is that the testator died possessed of the entire premises and that, therefore, her executor is chargeable with the entire proceeds of the sale less the amount of the mortgage. This contention rests entirely upon the said sale of the premises for taxes, for it appeared that the purchaser at the tax sale had taken his deed, and thereafter had quitclaimed to the said testator. It appears that the said purchaser was Mr. Conrady, who had been the lawyer for

Ungerland for 20 years and until Ungerland's death, and who was continued by the widow, both as administrator and as general guardian. Mr. Conrady purchased the premises for the consideration of $245.21, and received his deed on July 12, 1897. He quitclaimed to the widow on July 28, 1897, for the same consideration and $1, and the amount of his expenses incident to retaining a lawyer in Albany to attend to the sale. He made no profit by the transaction, and it is plain enough that his purchase was a friendly one. The title was passed by a title company, and the executor was represented by his attorney, who "handled the money." The executor testifies that he did not physically get possession of the money, but that it was passed in his presence. As to the other two-thirds, it is testified that the boys received some of it and the debts were paid. The three sons were present at the time, and as matter of fact two of them received one-third respectively of the net proceeds. It appeared, when the said widow sought to mortgage the premises for the $7,500, that her petition in the proceedings and her testimony therein showed that the infants were the owners of the premises and that she made claim by virtue of her dower right and by the said quit-claim deed, but that she was willing to subordinate her rights to the mortgage. The County Court confirmed the report of the referee. At the close of the testimony the learned surrogate stated orally: "I think that I am prepared to hold that the executor has assumed a constructive trust, and has become in duty and conscience bound to apply the proceeds as he has done. I shall regard the account as affected by that title. I will reserve my decision," but thereafter handed down an opinion in which, although he said, "Evidence is given tending to justify a finding that the testatrix had a legal title to the real estate involved, under circumstances which might impress upon her a constuctive trust to account to her three children for the rents and profits of the land as well as the value thereof, subject to her rights of dower therein," he indicated that he was com-

pelled to sustain the objection and to decree accordingly. In his second opinion the surrogate said: " Whatever equities may exist in behalf of the accountant against the fund realized upon the sale of the real estate, they must be disregarded in this proceeding. . No claims of creditors should appear in the summary of the account, whether they have been paid or not. Their payment *pro rata* should be decreed as in the case of claims remaining unpaid. There is no just reason for withholding the executor's commissions, if his distribution should be in accord with the settlement. The proof does not indicate any conscious wrong on his part." The second memorandum was filed on June 11, 1914, and thereupon, and almost immediately, the executor went to the equity side of the Supreme Court.

Before consideration of that step let us consider the equities of the case as presented to the surrogate. It is plain that the executor did not actually receive more than $1,500 of the net proceeds of the sale; that the balance thereof was actually and immediately received by the two children, and that the insistence that the executor should be charged with and must account for the entire net proceeds may mulct him personally in a large sum of money which, at most, went technically through his hands. It seems clear enough that the learned surrogate was reluctant to countenance an inequity. In Matter of Niles (113 N. Y. 556) the court say: " This matter of the administration of assets is one which is peculiarly within the cognizance of equity, and a Surrogate's Court, in adjusting the accounts of executors and administrators, is governed by principles of equity as well as of law. (Upson v. Badeau, 3 Bradf. 15.) In the exercise of the statutory powers, conferred upon him to direct and control the conduct and settle the accounts of administrators and executors, the surrogate is not fettered; nor is he prevented by any rule of law from doing exact justice to the parties. He is supposed to administer justice in each case within his jurisdiction, according as the equities of the case demand; within the confines only of statutory provisions." Perry on Trusts (6th

ed., edited by Howes, vol. 1, § 407) points the difference in the rules applied to executors in a court of law and in a court of equity, and, after stating the strictness of the former court, says: " But a court of equity would adjust the account of the executor upon equitable principles. A court of probate, in taking the account, would also act upon equitable principles," citing for the latter statement Upson v. Badeau (*supra*), cited by our Court of Appeals. (See, too, Matter of Rogers, 10 App. Div. 593, 597.) In Upson v. Badeau (*supra*) wherein the effect of an objection to an account was, in the language of Surrogate BRADFORD, " to mulct the executor in the sum of $1,500, for a supposed mistake in the deed," the surrogate said : " I cannot assent to such a doctrine. In adjusting the accounts of executors, this court is governed by principles of equity as well as of law, and even attaching to the recital in the deed of conveyance the consequences the counsel for the legatees urges, it is at all time competent for the executor here, as in a court of equity, unimpeded by technical rules, to show the fairness of his dealings — the real nature of the transaction, and the amount for which he should, in fact, be held liable. Upon any other rule he might be made the victim of a mistake while acting as a trustee and honestly discharging his duty."

But the surrogate was right, even if he believed that the proof before him was sufficient to establish a constructive trust. The accounting was begun in 1912, and, therefore, the broader powers now vested in the surrogate by the legislation of 1914 could not be exercised. (Matter of Iovinella, 166 App. Div. 460.) Certainly before that legislation the Surrogate's Court had no jurisdiction to declare a trust and to enforce it by decree. (Matter of Monroe, 142 N. Y. 484, 490, citing Fulton v. Whitney, 66 id. 557, and cited in Matter of Randall, 152 id. 520.)

Not only was this question outside the jurisdiction of the Surrogate's Court, but also was the question of the testator's exclusive title to the premises by virtue of the tax deed, so far

as that question involved the application of equitable princi-
ples. In Matter of Walker (136 N. Y. 20) the court declared
that "Questions of title to property have always been reserved
for the common law courts, or statutory tribunals invested to
some extent with their powers, where the right to a jury trial
is guaranteed, except in cases of equitable cognizance," and
denied the jurisdiction of the surrogate.    (See, too, Matter of
Fogarty, 117 App. Div. 583, 585, citing authorities; Matter of
United States Trust Co., 175 N. Y. 304, 309, and cases cited
in concurring opinion of VANN, J., at 312; Matter of Thomp-
son, 184 id. 36, 44.)

The executor brought his action seeking a judgment to
enjoin the defendants from entry of any decree until the hear-
ing and determination of his plea in the Supreme Court to
have a determination whether the surrogate had power to
decide what title the testator had in the premises, and if he
had no power, that the court determine the question, and if
he had the power and the court agreed with the surrogate,
that the court then decide what equitable claim the children
and heirs at law of Ungerland had on the proceeds of the
sale and what credit, if any, the plaintiff was entitled to on
his accounting on account of the payments made to the chil-
dren and heirs out of the proceeds of the sale of said premises,
and for such other and further relief as may be just and proper.
The action was brought by the executor in that capacity and
individually, against the creditors and claimants, the sons of
the testator and Conrady.    The plaintiff set forth the said tax
purchase by Conrady; alleged that he was then the attorney
for the owner; that it was a friendly purchase; that at the time
of the expiration of the redemption period the land was in
actual occupancy of the said infants and their mother; that
no written notice was served as required by section 14 of chap-
ter 711 of the Laws of 1893, but that 14 years had elapsed;
that the conveyance to Conrady was recorded without the
giving of notice, and no evidence of such notice was recorded,

and that because of such omission the tax deed was and is void. And plaintiff further alleged the proceedings to mortgage, the testimony of the mother in such proceedings, the result thereof, the conveyance to his said mother by one of the infants when of age, the death of the mother, probate of her will, the issue of letters to the plaintiff, his sale of the said premises, the proceedings subsequent thereto, and the presentation of the accounts to the surrogate and the proceedings thereupon, including the decision of the surrogate. The plaintiff alleged that the sole title relied upon by the objector was the said conveyances to and by Conrady; that no findings had been signed by the surrogate nor any decree entered, but that it directly appeared that the surrogate had determined the title to said premises as between the said testatrix and her children and proposed to sign a decree accordingly, although without jurisdiction to try a question of title to real estate; that the plaintiff was informed and believed that the surrogate proposes to make findings charging him with the purchase price of the entire premises; that the surrogate recognized that there is or may be an equitable claim on the part of the plaintiff executor for a credit of such two-thirds of the purchase price or of some equitable allowance, but as it is of an equitable nature the surrogate holds that he has not the power to determine the equities; that such a decree would charge the plaintiff with thousands of dollars never received, and all the creditors and general legatees would be paid in full at the expense of the plaintiff, as the said children would have an equitable defense against the plaintiff, and that the questions involved arose after the accounting and were not foreseen. The answer by denials and defenses virtually put in issue the various allegations of the complaint, pleaded the jurisdiction of the surrogate to determine the issues, alleged that there are no equitable issues and alleged the remedy of the plaintiff is appeal. I have but outlined the complaint, which is of 45 printed folios, and the answer, which is of 55 printed folios.

For the purposes of the trial at Special Term the parties made certain stipulations prior thereto· (which shortened the proof) as to the ownership of Henry Ungerland, the·tax sale, the deed therunder, the non-redemption of the premises, the proceedings to mortgage, the omission of the sons to bring any action, the filing of the account, the occupancy of the premises by Henry Ungerland and then by his wife and children; that no direct application had ever been made to the Comptroller for cancellation of his deed to Conrady, nor any action brought to test the title as provided by section 12 of chapter 711 of the Laws of 1893, section 132 of chapter 908 of the Laws of 1896 (Gen. Laws, ch. 24, being Tax Law), and section 132 of chapter 62 of the Laws of 1909 (Consol. Laws, ch. 60, being Tax Law); that the testator never transferred the property, and that the plaintiff determined the adjudication for himself as to the payments to the·sons and made them, as was evidenced by the affidavit of his attorney. The defendants stipulated that they found on record no evidence of a service of any notice under the statute for sale for taxes (Laws of 1893, ch. 711, § 14, or the amendments thereof), or of any record thereof with the tax deed, and that Conrady received as consideration for his tax deed the amount he had paid and $1, together with whatever additional expenses he was put to.

At the trial the defendants asked the plaintiff's attorney, then upon the witness stand, whether the legal title of the testator, as evidenced by said deed, was in any way disputed before the surrogate, and were answered, "Shown that her children were tenants in common of the property at the time she received that deed" by "Proof of the death of the father and who his heirs were." The defendants stipulated that search had been made of the records and no proof of service found of the notice required by the Tax Law of 1893, and the plaintiff's counsel testified that he had searched and that there is no such record. The plaintiff rested. It was conceded that the testator had controlled the property, managed it and col-

lected the rents down to the time of her death. The executor was called and testified that he had taken possession of the premises and had collected the rents; that previous to the payments out of the net proceeds of the sale to the sons, no demand was made on him therefor nor any proof of claim filed, and that he had not recovered such payments nor received them. It also appeared that the sons by two separate deeds had joined in the conveyance of the premises under the sale made by the executor, and that each had received at least one-third of the net proceeds of such sale. At the close the defendants renewed a motion to dismiss on the ground that plaintiff had no equitable standing in the court, and also moved upon defect of parties.

The learned Special Term said in its opinion that it agreed with the plaintiff that the testatrix died seized of one-third, and that all the executor should account for is one-third; that he had no right to receive the entire consideration if it did not belong to him or to the testator, that the mere fact that it passed through his hands, if it did so, imposed no responsibility and he should never have charged himself; that the two heirs conveyed their two-thirds of the real estate to the purchaser, and that it was for this conveyance the consideration was paid; that the testatrix owned one-third of the realty by the conveyance made to her by one of her sons; that she acquired no title by the void tax deed or the quitclaim from Conrady, and if there was any validity to the tax deed, she as general guardian of her infant children, guardian in socage and joint tenant with them, could take no title to the real estate of their father. And the court continued: " They were the heirs at law — she was their guardian — both of their person and property occupying the most sacred of all trust fiduciary relations to them, and the law does not countenance for the moment any such gross breach of trust on her part, as her creditors and legatees seek to effectuate here. Because the test-tatrix never made or asserted such a claim. In 1903, long

after the tax deed and Conrady quitclaim, on her application
to the County Court for leave to mortgage the property, she
solemnly declared under oath that it was the property of her
three infant children.    She knew that if any title passed under
the tax deed, a suggestion that I do not assent to, she held it
as trustee for her infant children.    The title passed to them at
the death of their father, she asserted no adverse claim, and
the net proceeds of the mortgage were paid to her as general
guardian of the infant.    The executor had no right to the con-
sideration paid for the conveyance of the two-thirds interest of
the children.    One of these children was an infant, and his
one-third share was sold under order of the Supreme Court.
What right could the plaintiff executor possibly have in this
one-third? "

But the learned court held that it should not interfere by
injunction with an accounting proceeding in the Surrogate's
Court which has progressed to the threshold of a decree,
inasmuch as that court was one of competent jurisdiction
with all the parties before it, and added: "It is within the
jurisdiction and power of the Surrogate's Court on the account-
ing to determine what property belonged to the testatrix,
and with what the executor should be charged." The court
also said that if the executor, through inadvertence or for
any reason, had charged himself improperly, the surrogate
could correct it, and if the surrogate erred he was subject to
the Appellate Division which could make new findings if nec-
essary.    Thereupon the court dismissed the complaint, but
without costs because it thought that the defendants were
" endeavoring to take an unfair advantage of the plaintiff
executor." The court made many findings of fact which are
in harmony with the facts which I have stated in this opinion.
But it made conclusions of law that the surrogate had full
jurisdiction and authority of and over all of the issues of fact
and law arising in said proceeding; that in the proceedings
before the surrogate no question of title or other equity arose

entitling the plaintiff to any equitable relief in the Supreme Court. But it also concluded that the testator gained no title to the premises described in the complaint through the quitclaim deed from Howard C. Conrady to her, as against her children; that the plaintiff, as executor of the said last will and testament, need account for only one-third of the purchase price paid for the whole of the premises described in the complaint on the sale thereof, in which he conveyed the interest therein of the said testatrix, and is entitled to credit for one-third of the amount of the incumbrances (but adding, "but this matter is for the Surrogate's Court"); that the plaintiff could not maintain the action, and that the defendants were entitled to judgment vacating the injunction *pendente lite* and dismissing the complaint. Judgment followed as of January 30, 1915. And on March 29, 1915, the surrogate entered a final decree wherein and whereby the executor is charged in his account with the entire amount for which the real estate was sold, to wit, $12,000, instead of $4,000, one-third, whereof he has charged himself. I think no error is to be assigned to the course of the learned surrogate under the circumstances as they existed at the time of his decree.

There was an equitable conversion of the realty by the will. (Stagg v. Jackson, 1 N. Y. 206; Hood v. Hood, 85 id. 570.) The executor by accepting his office accepted any trust with respect to the assets that came into his hands, and must execute them until relieved. (Perry Trusts, *supra,* § 264.) I am of opinion that the judgment of the Special Term should be reversed. For the court, although it decided that the plaintiff was entitled to equitable relief, yet denied it when it could properly have been granted. I think that the plaintiff had the right to invoke the equity powers of the Supreme Court, inasmuch as his account of administration of his office involved questions of his equitable rights which could not be determined by the surrogate. The Special Term decided that plaintiff's testator gained, as against her children, no title by the quitclaim

deed to her from the purchaser and grantee of the tax sale. It placed its decision probably upon the principles stated by Black on Tax Title (2d ed., §§ 273, 275, 276, 282). In section 275 the author says: "To take a single illustration at present — it is held that a guardian of infant wards cannot legally acquire a tax title to their lands; no such purchase by him will have the effect of destroying their estate," citing Wise v. Hyatt (68 Miss. 714); Dohms v. Mann (76 Iowa, 723). (See, too, Knolls v. Barnhart, 71 N. Y. 474, 479; Boyer v. East, 161 id. 580, 585.) And the question of the effect of the omission to file the notice by the purchaser was a substantial one. (Ostrander v. Reis, 206 N. Y. 448, affg. s. c., 142 App. Div. 18.) The plaintiff did not bring the action in the Supreme Court in order to establish the invalidity of the tax title, but because, as against his accounting but for one-third of the proceeds of the sale, he was met with the objection that he was chargeable with all of the proceeds, and he was in peril of a decree which was inequitable because the Surrogate's Court could not do equity. The objection rested solely upon the validity and effect of the tax title. I think that upon its findings the Special Term could well have halted the Surrogate's Court by injunction until a final determination of the questions presented to it. (Matter of Wagner, 52 Hun, 23, 28; affd., 119 N. Y. 28; Van Sinderen v. Lawrence, 50 Hun, 277; Pettigrew v. Foshay, 12 id. 486; Wright v. Fleming, 76 N. Y. 517.)

The judgment of the Supreme Court is reversed and a new trial is granted, costs to abide the final award of costs. The final decree of the Surrogate's Court of Kings county is reversed, without costs, and the matter of the accounting remitted to that court, which will not proceed to final decree in such proceedings until after the adjudication of the Supreme Court upon questions of an equitable character presented by the action in that court.

THOMAS, STAPLETON, MILLS and PUTNAM, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the final award of costs.